933 So.2d 417 (2006)
In re AMENDMENTS TO The RULES REGULATING THE FLORIDA BAR.
No. SC04-2246.
Supreme Court of Florida.
March 23, 2006.
As Revised on Denial of Rehearing June 29, 2006.
John F. Harkness, Jr., Executive Director, Tallahassee, FL, Alan B. Bookman, President, Pensacola, FL, Adele I. Stone, Chair, Special Committee to Review the ABA Model Rules 2002, Fort Lauderdale, FL, John A. Boggs, Director, Legal Division, Mary Ellen Bateman, Director, Legal Division DEUP, Elizabeth Clark Tarbert, Ethics Counsel, The Florida Bar, Tallahassee, FL, for Petitioner.
Marion J. Radson, City Attorney, Ex Officio Member of the Executive Council and Past Chair, City, County and Local Government Law Section, Gainesville, FL, Craig J. Coller, Chair, City, County and Local Government Law Section, Miami, FL, Anne Bast Brown, County Attorney, Levy County, Bronson, FL, Kraig A. Conn, Deputy General Counsel, Florida League of Cities, Inc., Tallahassee, FL, John Joseph Fredyma, Fort Myers, FL, Gerald T. Buhr, P.A., Lutz, FL, John C. Wolfe, City Attorney, City of St. Petersburg, St. Petersburg, FL, Alan Hardy Prather and Michele S. Hall of Dye, Deitrich, Prather, Petruff and St. Paul, P.L., Bradenton, FL, Frank S. Bartolone, Esquire, Boynton Beach, FL, Michael S. Mullin, County Attorney, Nassau County, Fernandina Beach, FL, Elizabeth M. Hernandez, City Attorney, City of Coral Gables, Coral Gables, FL, for Proponents.
Bob Dillinger, Public Defender, Sixth Judicial Circuit, Clearwater, Arthur I. Jacobs, General Counsel, Florida Prosecuting Attorneys Association, Fernandina Beach, FL, Katherine E. Giddings of Akerman Senterfitt, American Insurance Association ("AIA"), Peter J. Winders, General Counsel and Joseph H. Lang, Jr., Carlton Fields, P.A., Tampa, FL, for Opponents.
Carolyn S. Salisbury, Esquire, The Florida Bar Public Interest Law Section and the University of Miami School of Law, Coral Gables, FL, Caroline Heck Miller and Marcos Daniel Jimenez, U.S. Attorney's office, Southern District of Florida, Miami, FL, Gregory R. Miller, U.S. Attorney's office, Northern District of Florida, Tallahassee, FL, Paul I. Perez, U.S. Attorney's office, Middle District of Florida, Tampa, FL, Maxine M. Long of Shutts and Bowen, LLP, Miami, FL, and James B. Murphy, Jr. of Shook, Hardy and Bacon, LLP, Business Law Section of the Florida Bar, Tampa, FL, for Opponents in Part.
PER CURIAM.
The Florida Bar petitions this Court to consider proposed amendments to Chapters 4 and 5 of the Rules Regulating the Florida Bar. We have jurisdiction. See Art. V, § 15, Fla. Const.
The Florida Bar's Special Committee to Review the American Bar Association Model Rules 2002 (Committee) studied changes in the American Bar Association Model Rules of Professional Conduct and compared them with the existing Rules Regulating the Florida Bar. The primary concerns during this process included protecting the public and maintaining the core values of the legal profession. After completing the study, the Committee developed proposals to amend the Florida rules. Thereafter, the Committee submitted the proposals to the Board of Governors of The Florida Bar for its recommendation. *418 The Board approved the proposals, except for certain minimal revisions to rules 4-1.8 and 5-1.1 that were submitted after the proposals were published for comment in the October 15, 2004, edition of The Florida Bar News.[1]
In that publication, the Bar instructed interested parties to file any comments directly with the Court. Thereafter, the Bar filed its proposals. The Court received several comments and a response from The Florida Bar.
The Bar proposes amendments to the Preamble to Chapter 4 and rules 4-1.1 (Competence), 4-1.2 (Objectives and Scope of Representation), 4-1.3 (Diligence), 4-1.4 (Communication), 4-1.5 (Fees and Costs for Legal Services), 4-1.6 (Confidentiality of Information), 4-1.7 (Conflict of Interest; General Rule), 4-1.8 (Conflict of Interest; Prohibited and Other Transactions), 4-1.9 (Conflict of Interest; Former Client), 4-1.10 (Imputed Disqualification; General Rule), 4-1.11 (Successive Government and Private Employment), 4-1.12 (Former Judge or Arbitrator), 4-1.13 (Organization as Client), 4-1.16 (Declining or Terminating Representation), 4-1.17 (Sale of Law Practice), 4-2.1 (Adviser), 4-2.3 (Evaluation for Use by Third Persons), 4-3.1 (Meritorious Claims and Contentions), 4-3.2 (Expediting Litigation), 4-3.3 (Candor Toward the Tribunal), 4-3.6 (Trial Publicity), 4-3.7 (Lawyer as Witness), 4-3.8 (Special Responsibilities of a Prosecutor), 4-3.9 (Advocate in Nonadjudicative Proceedings), 4-4.1 (Truthfulness in Statements to Others), 4-4.2 (Communication with Person Represented by Counsel), 4-4.3 (Dealing with Unrepresented Persons), 4-4.4 (Respect for Rights of Third Persons), 4-5.1 (Responsibilities of a Partner or Supervisory Lawyer), 4-5.3 (Responsibilities Regarding Nonlawyer Assistants), 4-5.4 (Professional Independence of a Lawyer), 4-5.6 (Restrictions on Right to Practice), 4-8.1 (Bar Admission and Disciplinary Matters), 4-8.3 (Reporting Professional Misconduct), 4-8.4 (Misconduct), and 5-1.1 (Trust Accounts). Further, the Bar proposes the creation of new rules 4-1.18 (Duties to Prospective Client) and 4-2.4 (Lawyer Serving as Third-Party Neutral). The Bar also proposes the deletion of rule 4-2.2 (Intermediary).[2]
After considering the relevant comments filed and holding oral argument, the Court adopts The Florida Bar's proposals, except as follows.
The Bar proposed amending rule 4-1.7 (Conflict of Interest; General Rule), to include language regarding a current client's consent to representation despite a potential conflict. The Bar's proposal focused solely on confirming the client's consent in writing. However, in light of comments and oral argument, the Court modifies this proposal to permit a client to also consent by clear statements made on the record at a hearing.
With regard to rule 4-1.18 (Duties to Prospective Client), the Bar's proposal differs *419 from the ABA model rule in a significant manner. The ABA model rule permits screening, while the Bar's proposal does not. At oral argument, the Business Law Section of The Florida Bar presented arguments opposing the Bar's changes to the ABA model. After considering the various arguments, the Court modifies the proposal by including language from the ABA model rule that permits screening.
Due to possible contradictions in the proposed amendments for rule 4-3.3 (Candor Toward the Tribunal), the Court does not adopt the proposal. The Court directs the Bar to further study the proposal for rule 4-3.3.
After considering the proposed amendments to rule 4-3.6 (Trial Publicity), the Court does not adopt those amendments. Thus, there are no changes to this rule.
After considering the comments submitted by the State Attorney of the Sixth Judicial Circuit, the Florida Prosecuting Attorneys Association, and the United States Attorneys for the Districts of Florida, the Court does not adopt the proposed amendment to rule 4-3.8 (Special Responsibilities of a Prosecutor) that sought to create a new subdivision (b). The proposal for new subdivision (b) would have required the prosecutor in a criminal case to make reasonable efforts to ensure that the accused is advised of the right to counsel, is advised of the procedures to follow for obtaining counsel, and has been given a reasonable opportunity to obtain counsel. However, the Florida Rules of Criminal Procedure already invest in other persons or entities the obligations contained in this proposal. For example, Florida Rule of Criminal Procedure 3.111 outlines duties and responsibilities of both the courts and the police to provide counsel to indigents and partially indigent persons. In addition, rule 3.130 provides that the trial judge must at first appearance inform the defendant of the right to counsel and of the right to appointed counsel if the defendant cannot afford to retain counsel. The court must also give defendants who can afford counsel and who desire to retain counsel a reasonable time in which to obtain counsel on their own. These rules adequately require the police and the courts to give criminal defendants the proper information pertaining to the right to counsel and how that right can be exercised. Placing these obligations on prosecutors under the Rules Regulating the Florida Bar is neither necessary nor desirable. If prosecutors are to have obligations in this area, it should be made a part of the criminal procedure rules and not the Florida Bar rules.
Further, the Court does not adopt the other proposed amendment to rule 4-3.8 that sought to create new subdivision (e), which would have restricted a prosecutor from subpoenaing a lawyer in a grand jury or other criminal proceeding to present evidence about a past or present client. The Court directs the Bar to further study this proposal, including the differences between the Bar's proposal and the ABA model rule.
The Bar proposes changing the commentary to rule 4-4.1 (Truthfulness in Statements to Others), to conform to the ABA model rule. However, the proposal contains an unexplained deviation from the ABA model. After considering the proposal and the ABA model, the Court modifies the proposal to conform to the ABA model.
Accordingly, the Court adopts the amendments to the Rules Regulating the Florida Bar as set forth in the appendix to this opinion. Deletions are indicated by struck-through type, and new language is indicated by underscoring. The comments are included for explanation and guidance only and are not adopted as an official part *420 of the rules. The amendments shall become effective on May 22, 2006, at 12:01 a.m.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.

APPENDIX

CHAPTER 4. RULES OF PROFESSIONAL CONDUCT

PREAMBLE: A LAWYER'S RESPONSIBILITIES
A lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal system, and a public citizen having special responsibility for the quality of justice.
As a representative of clients, a lawyer performs various functions. As an adviser, a lawyer provides a client with an informed understanding of the client's legal rights and obligations and explains their practical implications. As an advocate, a lawyer zealously asserts the client's position under the rules of the adversary system. As a negotiator, a lawyer seeks a result advantageous to the client but consistent with requirements of honest dealing with others. As an intermediary between clients, a lawyer seeks to reconcile their interests as an adviser and, to a limited extent, as a spokesperson for each client. As an evaluator, a lawyer acts as an evaluator by examining a client's legal affairs and reporting about them to the client or to others.
In addition to these representational functions, a lawyer may serve as a third-party neutral, a nonrepresentational role helping the parties to resolve a dispute or other matter. Some of these rules apply directly to lawyers who are or have served as third-party neutrals. See, e.g., rules 4-1.12 and 4-2.4. In addition, there are rules that apply to lawyers who are not active in the practice of law or to practicing lawyers even when they are acting in a nonprofessional capacity. For example, a lawyer who commits fraud in the conduct of a business is subject to discipline for engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. See rule 4-8.4.
In all professional functions a lawyer should be competent, prompt, and diligent. A lawyer should maintain communication with a client concerning the representation. A lawyer should keep in confidence information relating to representation of a client except so far as disclosure is required or permitted by the Rules of Professional Conduct or by law.
A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers, and public officials. While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process.
As a public citizen, a lawyer should seek improvement of the law, access to the legal system, the administration of justice, and the quality of service rendered by the legal profession. As a member of a learned profession, a lawyer should cultivate knowledge of the law beyond its use for clients, employ that knowledge in reform of the law, and work to strengthen legal education. In addition, a lawyer should further the public's understanding of and *421 confidence in the rule of law and the justice system, because legal institutions in a constitutional democracy depend on popular participation and support to maintain their authority. A lawyer should be mindful of deficiencies in the administration of justice and of the fact that the poor, and sometimes persons who are not poor, cannot afford adequate legal assistance, and. Therefore, all lawyers should therefore devote professional time and resources and use civic influence in their behalfto ensure equal access to our system of justice for all those who because of economic or social barriers cannot afford or secure adequate legal counsel. A lawyer should aid the legal profession in pursuing these objectives and should help the bar regulate itself in the public interest.
Many of the lawyer's professional responsibilities are prescribed in the Rules of Professional Conduct and in substantive and procedural law. A lawyer is also guided by personal conscience and the approbation of professional peers. A lawyer should strive to attain the highest level of skill, to improve the law and the legal profession, and to exemplify the legal profession's ideals of public service.
A lawyer's responsibilities as a representative of clients, an officer of the legal system, and a public citizen are usually harmonious. Zealous advocacy is not inconsistent with justice. Moreover, unless violations of law or injury to another or another's property is involved, preserving client confidences ordinarily serves the public interest because people are more likely to seek legal advice, and thereby heed their legal obligations, when they know their communications will be private.
In the practice of law conflicting responsibilities are often encountered. Difficult ethical problems may arise from a conflict between a lawyer's responsibility to a client and the lawyer's own sense of personal honor, including obligations to society and the legal profession. The Rules of Professional Conduct often prescribe terms for resolving such conflicts. Within the framework of these rules, however, many difficult issues of professional discretion can arise. Such issues must be resolved through the exercise of sensitive professional and moral judgment guided by the basic principles underlying the rules. These principles include the lawyer's obligation to protect and pursue a client's legitimate interests, within the bounds of the law, while maintaining a professional, courteous, and civil attitude toward all persons involved in the legal system.
Lawyers are officers of the court and they are responsible to the judiciary for the propriety of their professional activities. Within that context, the legal profession has been granted powers of self-government. Self-regulation helps maintain the legal profession's independence from undue government domination. An independent legal profession is an important force in preserving government under law, for abuse of legal authority is more readily challenged by a profession whose members are not dependent on the executive and legislative branches of government for the right to practice. Supervision by an independent judiciary, and conformity with the rules the judiciary adopts for the profession, assures both independence and responsibility.
Thus, every lawyer is responsible for observance of the Rules of Professional Conduct. A lawyer should also aid in securing their observance by other lawyers. Neglect of these responsibilities compromises the independence of the profession and the public interest that it serves.

*422 Scope:
The Rules of Professional Conduct are rules of reason. They should be interpreted with reference to the purposes of legal representation and of the law itself. Some of the rules are imperatives, cast in the terms of "shall" or "shall not." These define proper conduct for purposes of professional discipline. Others, generally cast in the term "may," are permissive and define areas under the rules in which the lawyer has professional discretion to exercise professional judgment. No disciplinary action should be taken when the lawyer chooses not to act or acts within the bounds of such discretion. Other rules define the nature of relationships between the lawyer and others. The rules are thus partly obligatory and disciplinary and partly constitutive and descriptive in that they define a lawyer's professional role.
The comment accompanying each rule explains and illustrates the meaning and purpose of the rule. The comments are intended only as guides to interpretation, whereas the text of each rule is authoritative. Thus, comments, even when they use the term "should," do not add obligations to the rules but merely provide guidance for practicing in compliance with the rules.
The rules presuppose a larger legal context shaping the lawyer's role. That context includes court rules and statutes relating to matters of licensure, laws defining specific obligations of lawyers, and substantive and procedural law in general. Compliance with the rules, as with all law in an open society, depends primarily upon understanding and voluntary compliance, secondarily upon reinforcement by peer and public opinion, and finally, when necessary, upon enforcement through disciplinary proceedings. The rules do not, however, exhaust the moral and ethical considerations that should inform a lawyer, for no worthwhile human activity can be completely defined by legal rules. The rules simply provide a framework for the ethical practice of law. The comments are sometimes used to alert lawyers to their responsibilities under other law.
Furthermore, for purposes of determining the lawyer's authority and responsibility, principles of substantive law external to these rules determine whether a client-lawyer relationship exists. Most of the duties flowing from the client-lawyer relationship attach only after the client has requested the lawyer to render legal services and the lawyer has agreed to do so. But there are some duties, such as that of confidentiality under rule 4-1.6, which may attach when the lawyer agrees to consider whether a client-lawyer relationship shall be established. See rule 4-1.18. Whether a client-lawyer relationship exists for any specific purpose can depend on the circumstances and may be a question of fact.
Failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process. The rules presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question in recognition of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation. Moreover, the rules presuppose that whether discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as the willfulness and seriousness of the violation, extenuating factors, and whether there have been previous violations.
Violation of a rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. In addition, violation of a rule does not necessarily warrant any other *423 nondisciplinary remedy, such as disqualification of a lawyer in pending litigation. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule. Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such duty. Nevertheless, since the rules do establish standards of conduct by lawyers, a lawyer's violation of a rule may be evidence of a breach of the applicable standard of conduct.
Moreover, these rules are not intended to govern or affect judicial application of either the attorney-client or work product privilege. Those privileges were developed to promote compliance with law and fairness in litigation. In reliance on the attorney-client privilege, clients are ordinarily entitled to expect that communications within the scope of the privilege will be protected against compelled disclosure. The attorney-client privilege is that of the client and not of the lawyer. In exceptional situations, the rules might allow or require the lawyer to disclose a client confidence. This, however, does not vitiate the proposition that, as a general matter, the client has a reasonable expectation that information relating to the client will not be voluntarily disclosed and that disclosure of such information may be compelled only in accordance with recognized exceptions to the attorney-client and work product privileges.
The lawyer's exercise of discretion not to disclose information under rule 4-1.6 should not be subject to reexamination. Permitting such reexamination would be incompatible with the general policy of promoting compliance with law through assurances that communications will be protected against disclosure.

Terminology:
"Belief" or "believes" denotes that the person involved actually supposed the fact in question to be true. A person's belief may be inferred from circumstances.
"Consult" or "consultation" denotes communication of information reasonably sufficient to permit the client to appreciate the significance of the matter in question.
"Confirmed in writing," when used in reference to the informed consent of a person, denotes informed consent that is given in writing by the person or a writing that a lawyer promptly transmits to the person confirming an oral informed consent. See "informed consent" below. If it is not feasible to obtain or transmit the writing at the time the person gives informed consent, then the lawyer must obtain or transmit it within a reasonable time thereafter.
"Firm" or "law firm" denotes a lawyer or lawyers in a private firm, law partnership, professional corporation, sole proprietorship, or other association authorized to practice law; or lawyers employed in the legal department of a corporation or other organization, and lawyers employed in a legal services organization. See comment, rule 4-1.10.
"Fraud" or "fraudulent" denotes conduct having a purpose to deceive and not merely negligent misrepresentation or failure to apprise another of relevant information.
*424 "Informed consent" denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.
"Knowingly," "known," or "knows" denotes actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances.
"Lawyer" denotes a person who is a member of The Florida Bar or otherwise authorized to practice in any court of the State of Florida.
"Partner" denotes a member of a partnership and a shareholder in a law firm organized as a professional corporation, or a member of an association authorized to practice law.
"Reasonable" or "reasonably" when used in relation to conduct by a lawyer denotes the conduct of a reasonably prudent and competent lawyer.
"Reasonable belief" or "reasonably believes" when used in reference to a lawyer denotes that the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable.
"Reasonably should know" when used in reference to a lawyer denotes that a lawyer of reasonable prudence and competence would ascertain the matter in question.
"Screened" denotes the isolation of a lawyer from any participation in a matter through the timely imposition of procedures within a firm that are reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect under these rules or other law.
"Substantial" when used in reference to degree or extent denotes a material matter of clear and weighty importance.
"Tribunal" denotes a court, an arbitrator in a binding arbitration proceeding, or a legislative body, administrative agency, or other body acting in an adjudicative capacity. A legislative body, administrative agency, or other body acts in an adjudicative capacity when a neutral official, after the presentation of evidence or legal argument by a party or parties, will render a binding legal judgment directly affecting a party's interests in a particular matter.
"Writing" or "written" denotes a tangible or electronic record of a communication or representation, including handwriting, typewriting, printing, photostating, photography, audio or video recording, and e-mail. A "signed" writing includes an electronic sound, symbol or process attached to or logically associated with a writing and executed or adopted by a person with the intent to sign the writing.

Comment

Confirmed in writing
If it is not feasible to obtain or transmit a written confirmation at the time the client gives informed consent, then the lawyer must obtain or transmit it within a reasonable time thereafter. If a lawyer has obtained a client's informed consent, the lawyer may act in reliance on that consent so long as it is confirmed in writing within a reasonable time thereafter.

Firm
Whether 2 or more lawyers constitute a firm above can depend on the specific facts. For example, 2 practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm. However, if they present themselves to the public in a way that suggests that they are a firm or conduct themselves as a firm, *425 they should be regarded as a firm for purposes of the rules. The terms of any formal agreement between associated lawyers are relevant in determining whether they are a firm, as is the fact that they have mutual access to information concerning the clients they serve. Furthermore, it is relevant in doubtful cases to consider the underlying purpose of the rule that is involved. A group of lawyers could be regarded as a firm for purposes of the rule that the same lawyer should not represent opposing parties in litigation, while it might not be so regarded for purposes of the rule that information acquired by 1 lawyer is attributed to another.
With respect to the law department of an organization, including the government, there is ordinarily no question that the members of the department constitute a firm within the meaning of the Rules of Professional Conduct. There can be uncertainty, however, as to the identity of the client. For example, it may not be clear whether the law department of a corporation represents a subsidiary or an affiliated corporation, as well as the corporation by which the members of the department are directly employed. A similar question can arise concerning an unincorporated association and its local affiliates.
Similar questions can also arise with respect to lawyers in legal aid and legal services organizations. Depending upon the structure of the organization, the entire organization or different components of it may constitute a firm or firms for purposes of these rules.

Fraud
When used in these rules, the terms "fraud" or "fraudulent" refer to conduct that has a purpose to deceive. This does not include merely negligent misrepresentation or negligent failure to apprise another of relevant information. For purposes of these rules, it is not necessary that anyone has suffered damages or relied on the misrepresentation or failure to inform.

Informed consent
Many of the Rules of Professional Conduct require the lawyer to obtain the informed consent of a client or other person (e.g., a former client or, under certain circumstances, a prospective client) before accepting or continuing representation or pursuing a course of conduct. See, e.g., rules 4-1.2(c), 4-1.6(a), 4-1.7(b), and 4-1.18. The communication necessary to obtain such consent will vary according to the rule involved and the circumstances giving rise to the need to obtain informed consent. The lawyer must make reasonable efforts to ensure that the client or other person possesses information reasonably adequate to make an informed decision. Ordinarily, this will require communication that includes a disclosure of the facts and circumstances giving rise to the situation, any explanation reasonably necessary to inform the client or other person of the material advantages and disadvantages of the proposed course of conduct and a discussion of the client's or other person's options and alternatives. In some circumstances it may be appropriate for a lawyer to advise a client or other person to seek the advice of other counsel. A lawyer need not inform a client or other person of facts or implications already known to the client or other person; nevertheless, a lawyer who does not personally inform the client or other person assumes the risk that the client or other person is inadequately informed and the consent is invalid. In determining whether the information and explanation provided are reasonably adequate, relevant factors include whether the client or other person is experienced in legal matters generally and in making decisions of the type *426 involved, and whether the client or other person is independently represented by other counsel in giving the consent. Normally, such persons need less information and explanation than others, and generally a client or other person who is independently represented by other counsel in giving the consent should be assumed to have given informed consent.
Obtaining informed consent will usually require an affirmative response by the client or other person. In general, a lawyer may not assume consent from a client's or other person's silence. Consent may be inferred, however, from the conduct of a client or other person who has reasonably adequate information about the matter. A number of rules state that a person's consent be confirmed in writing. See, e.g., rule 4-1.7(b). For a definition of "writing" and "confirmed in writing," see terminology above. Other rules require that a client's consent be obtained in a writing signed by the client. See, e.g., rule 4-1.8(a). For a definition of "signed," see terminology above.

Screened
This definition applies to situations where screening of a personally disqualified lawyer is permitted to remove imputation of a conflict of interest under rules 4-1.11, 4-1.12, or 4-1.18.
The purpose of screening is to assure the affected parties that confidential information known by the personally disqualified lawyer remains protected. The personally disqualified lawyer should acknowledge the obligation not to communicate with any of the other lawyers in the firm with respect to the matter. Similarly, other lawyers in the firm who are working on the matter should be informed that the screening is in place and that they may not communicate with the personally disqualified lawyer with respect to the matter. Additional screening measures that are appropriate for the particular matter will depend on the circumstances. To implement, reinforce, and remind all affected lawyers of the presence of the screening, it may be appropriate for the firm to undertake such procedures as a written undertaking by the screened lawyer to avoid any communication with other firm personnel and any contact with any firm files or other materials relating to the matter, written notice and instructions to all other firm personnel forbidding any communication with the screened lawyer relating to the matter, denial of access by the screened lawyer to firm files or other materials relating to the matter, and periodic reminders of the screen to the screened lawyer and all other firm personnel.
In order to be effective, screening measures must be implemented as soon as practicable after a lawyer or law firm knows or reasonably should know that there is a need for screening.

4-1. CLIENT-LAWYER RELATIONSHIP

RULE 4-1.1 COMPETENCE
[No Change]

Comment

Legal knowledge and skill
[No Change]

Thoroughness and preparation
Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation. The required attention and preparation are determined in part by what is at stake; major litigation and complex *427 transactions ordinarily require more elaborateextensive treatment than matters of lesser complexity and consequence. The lawyer should consult with the client about the degree of thoroughness and the level of preparation required as well as the estimated costs involved under the circumstances.

Maintaining competence
To maintain the requisite knowledge and skill, a lawyer should keep abreast of changes in the law and its practice, engage in continuing study and education, and comply with all continuing legal education requirements to which the lawyer is subject.

RULE 4-1.2 OBJECTIVES AND SCOPE OF REPRESENTATION
(a) Lawyer to Abide by Client's Decisions. A Subject to subdivisions (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation, subject to subdivisions (c), (d), and (e), and, as required by rule 4-1.4, shall reasonably consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to make or accept an offer of settlement ofsettle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial, and whether the client will testify.
(b) [No Change]
(c) Limitation of Objectives and Scope of Representation. If not prohibited by law or rule, a lawyer and client may agree to limit the objectives or scope of the representation if the limitation is reasonable under the circumstances and the client consents in writing after consultationgives informed consent in writing. If the attorney and client agree to limit the scope of the representation, the lawyer shall advise the client regarding applicability of the rule prohibiting communication with a represented person.
(d) [No Change]
(e) Limitation on Lawyer's Conduct. When a lawyer knows or reasonably should know that a client expects assistance not permitted by the Rules of Professional Conduct or by law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct.

Comment

Objectives of representationAllocation of authority between client and lawyer
Both lawyer and client have authority and responsibility in the objectives and means of representation. TheSubdivision (a) confers upon the client hasthe ultimate authority to determine the purposes to be served by legal representation, within the limits imposed by law and the lawyer's professional obligations. Within those limits, a client also has a right to consult with the lawyer about the means to be used in pursuing those objectives. At the same time, a lawyer is not required to pursue objectives or employ means simply because a client may wish that the lawyer do so. A clear distinction between objectives and means sometimes cannot be drawn, and in many cases the client-lawyer relationship partakes of a joint undertaking. In questions of means, the lawyer should assume responsibility for technical and legal tactical issues but should defer to the client regarding such questions as the expense to be incurred and concern for third persons who might be adversely affected. Law defining the lawyer's scope of authority in litigation varies among jurisdictions. *428 The decisions specified in subdivision (a), such as whether to settle a civil matter, must also be made by the client. See rule 4-1.4(a)(1) for the lawyer's duty to communicate with the client about such decisions. With respect to the means by which the client's objectives are to be pursued, the lawyer shall consult with the client as required by rule 4-1.4(a)(2) and may take such action as is impliedly authorized to carry out the representation.
On occasion, however, a lawyer and a client may disagree about the means to be used to accomplish the client's objectives. The lawyer should consult with the client and seek a mutually acceptable resolution of the disagreement. If such efforts are unavailing and the lawyer has a fundamental disagreement with the client, the lawyer may withdraw from the representation. See rule 4-1.16(b)(4). Conversely, the client may resolve the disagreement by discharging the lawyer. See rule 4-1.16(a)(3).
At the outset of a representation, the client may authorize the lawyer to take specific action on the client's behalf without further consultation. Absent a material change in circumstances and subject to rule 4-1.4, a lawyer may rely on such an advance authorization. The client may, however, revoke such authority at any time.
In a case in which the client appears to be suffering mental disability, the lawyer's duty to abide by the client's decisions is to be guided by reference to rule 4-1.14.

Independence from client's views or activities
[No Change]

Services limited in objectives, scope or meansAgreements limiting scope of representation
The objectives or scope of services to be provided by a lawyer may be limited by agreement with the client or by the terms under which the lawyer's services are made available to the client. For example, a retainer may be for a specifically defined purpose. Representation provided through a legal aid agency may be subject to limitations on the types of cases the agency handles. When a lawyer has been retained by an insurer to represent an insured, for example, the representation may be limited to matters related to the insurance coverage. TheA limited representation may be appropriate because the client has limited objectives for the representation. In addition, the terms upon which representation is undertaken may exclude specific objectives or means that might otherwise be used to accomplish the client's objectives. Such limitations may exclude objectives or meansactions that the client thinks are too costly or that the lawyer regards as repugnant or imprudent, or which the client regards as financially impractical.
Although this rule affords the lawyer and client substantial latitude to limit the representation if not prohibited by law or rule, the limitation must be reasonable under the circumstances. If, for example, a client's objective is limited to securing general information about the law the client needs in order to handle a common and typically uncomplicated legal problem, the lawyer and client may agree that the lawyer's services will be limited to a brief consultation. Such a limitation, however, would not be reasonable if the time allotted was not sufficient to yield advice upon which the client could rely. In addition, a lawyer and client may agree that the representation will be limited to providing assistance out of court, including providing advice on the operation of the court system and drafting pleadings and responses. If the lawyer assists a pro se litigant by *429 drafting any document to be submitted to a court, the lawyer is not obligated to sign the document. However, the lawyer must indicate "Prepared with the assistance of counsel" on the document to avoid misleading the court, which otherwise might be under the impression that the person, who appears to be proceeding pro se, has received no assistance from a lawyer. If not prohibited by law or rule, a lawyer and client may agree that any in-court representation in a family law proceeding be limited as provided for in Family Law Rule of Procedure 12.040. For example, a lawyer and client may agree that the lawyer will represent the client at a hearing regarding child support and not at the final hearing or in any other hearings. For limited in-court representation in family law proceedings, the attorney shall communicate to the client the specific boundaries and limitations of the representation so that the client is able to give informed consent to the representation.
Regardless of the circumstances, a lawyer providing limited representation forms an attorney-client relationship with the litigant, and owes the client all attendant ethical obligations and duties imposed by the Rules Regulating The Florida Bar, including, but not limited to, duties of competence, communication, confidentiality and avoidance of conflicts of interest. Although an agreement for limited representation does not exempt a lawyer from the duty to provide competent representation, the limitation is a factor to be considered when determining the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation. See rule 4-1.1.
An agreement concerning the scope of representation must accord with the Rules of Professional Conduct and law. Thus For example, the client may not be asked to agree to representation so limited in scope as to violate rule 4-1.1 or to surrender the right to terminate the lawyer's services or the right to settle litigation that the lawyer might wish to continue.

Criminal, fraudulent, and prohibited transactions
A lawyer is required to give an honest opinion about the actual consequences that appear likely to result from a client's conduct. The fact that a client uses advice in a course of action that is criminal or fraudulent does not, of itself, make a lawyer a party to the course of action. However, a lawyer may not assist a client in conduct that the lawyer knows or reasonably should know to be criminal or fraudulent. There is a critical distinction between presenting an analysis of legal aspects of questionable conduct and recommending the means by which a crime or fraud might be committed with impunity.
When the client's course of action has already begun and is continuing, the lawyer's responsibility is especially delicate. The lawyer is not permitted to reveal the client's wrongdoing, except where permitted or required by rule 4-1.6. However, theThe lawyer is required to avoid furthering the purposeassisting the client, for example, by drafting or delivering documents that the lawyer knows are fraudulent or by suggesting how itthe wrongdoing might be concealed. A lawyer may not continue assisting a client in conduct that the lawyer originally supposes issupposed was legally proper but then discovers is criminal or fraudulent. WithdrawalThe lawyer must, therefore, withdraw from the representation, therefore, may be requiredof the client in the matter. See rule 4-1.16(a). In some cases, withdrawal alone might be insufficient. It may be necessary for the lawyer to give notice of the fact of withdrawal and to disaffirm any opinion, document, *430 affirmation, or the like. See rule 4-4.1.
Where the client is a fiduciary, the lawyer may be charged with special obligations in dealings with a beneficiary.
Subdivision (d) applies whether or not the defrauded party is a party to the transaction. HenceFor example, a lawyer shouldmust not participate in a sham transaction; for example, a transaction to effectuate criminal or fraudulent escapeavoidance of tax liability. Subdivision (d) does not preclude undertaking a criminal defense incident to a general retainer for legal services to a lawful enterprise. The last sentence of subdivision (d) recognizes that determining the validity or interpretation of a statute or regulation may require a course of action involving disobedience of the statute or regulation or of the interpretation placed upon it by governmental authorities.
If a lawyer comes to know or reasonably should know that a client expects assistance not permitted by the Rules of Professional Conduct or other law or if the lawyer intends to act contrary to the client's instructions, the lawyer must consult with the client regarding the limitations on the lawyer's conduct. See rule 4-1.4(a)(5).

RULE 4-1.3 DILIGENCE
[No Change]

Comment
A lawyer should pursue a matter on behalf of a client despite opposition, obstruction, or personal inconvenience to the lawyer and may take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer should must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf. However, aA lawyer is not bound, however, to press for every advantage that might be realized for a client. A For example, a lawyer has may have authority to exercise professional discretion in determining the means by which a matter should be pursued. See rule 4-1.2. A lawyer's workload should be controlled so that each matter can be handled adequately. The lawyer's duty to act with reasonable diligence does not require the use of offensive tactics or preclude the treating of all persons involved in the legal process with courtesy and respect.
A lawyer's workload must be controlled so that each matter can be handled competently.
Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected by the passage of time or the change of conditions; in extreme instances, as when a lawyer overlooks a statute of limitations, the client's legal position may be destroyed. Even when the client's interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer. A lawyer's duty to act with reasonable promptness, however, does not preclude the lawyer from agreeing to a reasonable request for a postponement that will not prejudice the lawyer's client.
Unless the relationship is terminated as provided in rule 4-1.16, a lawyer should carry through to conclusion all matters undertaken for a client. If a lawyer's employment is limited to a specific matter, the relationship terminates when the matter has been resolved. If a lawyer has served a client over a substantial period in a variety of matters, the client sometimes may assume that the lawyer will continue to serve on a continuing basis unless the lawyer gives notice of withdrawal. Doubt about whether a client-lawyer relationship *431 still exists should be clarified by the lawyer, preferably in writing, so that the client will not mistakenly suppose the lawyer is looking after the client's affairs when the lawyer has ceased to do so. For example, if a lawyer has handled a judicial or administrative proceeding that produced a result adverse to the client but has not been specifically instructed concerning pursuit of and the lawyer and the client have not agreed that the lawyer will handle the matter on appeal, the lawyer should advise must consult with the client of about the possibility of appeal before relinquishing responsibility for the matter. See rule 4-1.4(a)(2). Whether the lawyer is obligated to prosecute the appeal for the client depends on the scope of the representation the lawyer has agreed to provide to the client. See rule 4-1.2.

RULE 4-1.4 COMMUNICATION
(a) Informing Client of Status of Representation. A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in terminology, is required by these rules;
(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter;
(4) promptly comply with reasonable requests for information; and
(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows or reasonably should know that the client expects assistance not permitted by the Rules of Professional Conduct or other law.
(b) [No Change]

Comment
Reasonable communication between the lawyer and the client is necessary for the client to effectively participate in the representation.

Communicating with client
If these rules require that a particular decision about the representation be made by the client, subdivision (a)(1) requires that the lawyer promptly consult with and secure the client's consent prior to taking action unless prior discussions with the client have resolved what action the client wants the lawyer to take. For example, a lawyer who receives from opposing counsel an offer of settlement in a civil controversy or a proffered plea bargain in a criminal case must promptly inform the client of its substance unless the client has previously indicated that the proposal will be acceptable or unacceptable or has authorized the lawyer to accept or to reject the offer. See rule 4-1.2(a).
Subdivision (a)(2) requires the lawyer to reasonably consult with the client about the means to be used to accomplish the client's objectives. In some situations  depending on both the importance of the action under consideration and the feasibility of consulting with the client  this duty will require consultation prior to taking action. In other circumstances, such as during a trial when an immediate decision must be made, the exigency of the situation may require the lawyer to act without prior consultation. In such cases the lawyer must nonetheless act reasonably to inform the client of actions the lawyer has taken on the client's behalf. Additionally, subdivision (a)(3) requires that the lawyer keep the client reasonably informed about the status of the matter, such as significant *432 developments affecting the timing or the substance of the representation.
A lawyer's regular communication with clients will minimize the occasions on which a client will need to request information concerning the representation. When a client makes a reasonable request for information, however, subdivision (a)(4) requires prompt compliance with the request, or if a prompt response is not feasible, that the lawyer, or a member of the lawyer's staff, acknowledge receipt of the request and advise the client when a response may be expected.

Explaining matters
The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so. For example, a lawyer negotiating on behalf of a client should provide the client with facts relevant to the matter, inform the client of communications from another party, and take other reasonable steps that permit the client to make a decision regarding a serious offer from another party. A lawyer who receives from opposing counsel an offer of settlement in a civil controversy or a proffered plea bargain in a criminal case should promptly inform the client of its substance unless prior discussions with the client have left it clear that the proposal will be unacceptable. See rule 4-1.2(a). Even when a client delegates authority to the lawyer, the client should be kept advised of the status of the matter.
Adequacy of communication depends in part on the kind of advice or assistance that is involved. For example, in negotiations where when there is time to explain a proposal made in a negotiation, the lawyer should review all important provisions with the client before proceeding to an agreement. In litigation a lawyer should explain the general strategy and prospects of success and ordinarily should consult the client on tactics that might are likely to result in significant expense or to injure or coerce others. On the other hand, a lawyer ordinarily cannot will not be expected to describe trial or negotiation strategy in detail. The guiding principle is that the lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interests and the client's overall requirements as to the character of representation. In certain circumstances, such as when a lawyer asks a client to consent to a representation affected by a conflict of interest, the client must give informed consent, as defined in terminology.
Ordinarily, the information to be provided is that appropriate for a client who is a comprehending and responsible adult. However, fully informing the client according to this standard may be impracticable, for example, where the client is a child or suffers from mental disability. See rule 4-1.14. When the client is an organization or group, it is often impossible or inappropriate to inform every one of its members about its legal affairs; ordinarily, the lawyer should address communications to the appropriate officials of the organization. See rule 4-1.13. Where many routine matters are involved, a system of limited or occasional reporting may be arranged with the client. Practical exigency may also require a lawyer to act for a client without prior consultation.

Withholding information
In some circumstances, a lawyer may be justified in delaying transmission of information when the client would be likely to react imprudently to an immediate communication. Thus, a lawyer might withhold a psychiatric diagnosis of a client when the examining psychiatrist indicates *433 that disclosure would harm the client. A lawyer may not withhold information to serve the lawyer's own interest or convenience or the interests or convenience of another person. Rules or court orders governing litigation may provide that information supplied to a lawyer may not be disclosed to the client. Rule 4-3.4(c) directs compliance with such rules or orders.

RULE 4-1.5 FEES AND COSTS FOR LEGAL SERVICES
(a) [No Change]
(b) Factors to Be Considered in Determining Reasonable Fees and Costs. [No Other Changes]
(c)  (h) [No Change]

Comment

Bases or rate of fees and costs
[No Change]

Terms of payment
A lawyer may require advance payment of a fee but is obliged to return any unearned portion. See rule 4-1.16(d). A lawyer is not, however, required to return retainers that, pursuant to an agreement with a client, are not refundable. A lawyer may accept property in payment for services, such as an ownership interest in an enterprise, providing this does not involve acquisition of a proprietary interest in the cause of action or subject matter of the litigation contrary to rule 4-1.8(i). However, a fee paid in property instead of money may be subject to special scrutiny because it involves questions concerning both the value of the services and the lawyer's special knowledge of the value of the property.
An agreement may not be made whose terms might induce the lawyer improperly to curtail services for the client or perform them in a way contrary to the client's interest. For example, a lawyer should not enter into an agreement whereby services are to be provided only up to a stated amount when it is foreseeable that more extensive services probably will be required, unless the situation is adequately explained to the client. Otherwise, the client might have to bargain for further assistance in the midst of a proceeding or transaction. However, it is proper to define the extent of services in light of the client's ability to pay. A lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures. When there is doubt whether a contingent fee is consistent with the client's best interest, the lawyer should offer the client alternative bases for the fee and explain their implications. Applicable law may impose limitations on contingent fees, such as a ceiling on the percentage.
Rule 4-1.5(f)(3) does not apply to lawyers seeking to obtain or enforce judgments for arrearages.

Prohibited contingent fees
Subdivision (f)(3)(A) prohibits a lawyer from charging a contingent fee in a domestic relations matter when payment is contingent upon the securing of a divorce or upon the amount of alimony or support or property settlement to be obtained. This provision does not preclude a contract for a contingent fee for legal representation in connection with the recovery of post-judgment balances due under support, alimony, or other financial orders because such contracts do not implicate the same policy concerns.

Contingent fee regulation
Subdivision (e) is intended to clarify that whether the lawyer's fee contract complies with these rules is a matter between the lawyer and client and an issue for professional disciplinary enforcement. The rules *434 and subdivision (e) are not intended to be used as procedural weapons or defenses by others. Allowing opposing parties to assert noncompliance with these rules as a defense, including whether the fee is fixed or contingent, allows for potential inequity if the opposing party is allowed to escape responsibility for their actions solely through application of these rules.
Rule 4-1.5(f)(4) should not be construed to apply to actions or claims seeking property or other damages arising in the commercial litigation context.
Rule 4-1.5(f)(4)(B) is intended to apply only to contingent aspects of fee agreements. In the situation where a lawyer and client enter a contract for part noncontingent and part contingent attorney's fees, rule 4-1.5(f)(4)(B) should not be construed to apply to and prohibit or limit the noncontingent portion of the fee agreement. An attorney could properly charge and retain the noncontingent portion of the fee even if the matter was not successfully prosecuted or if the noncontingent portion of the fee exceeded the schedule set forth in rule 4-1.5(f)(4)(B). Rule 4-1.5(f)(4)(B) should, however, be construed to apply to any additional contingent portion of such a contract when considered together with earned noncontingent fees. Thus, under such a contract a lawyer may demand or collect only such additional contingent fees as would not cause the total fees to exceed the schedule set forth in rule 4-1.5(f)(4)(B).
The limitations in rule 4-1.5(f)(4)(B)(i)(c) are only to be applied in the case where all the defendants admit liability at the time they file their initial answer and the trial is only on the issue of the amount or extent of the loss or the extent of injury suffered by the client. If the trial involves not only the issue of damages but also such questions as proximate cause, affirmative defenses, seat belt defense, or other similar matters, the limitations are not to be applied because of the contingent nature of the case being left for resolution by the trier of fact.
Rule 4-1.5(f)(4)(B)(ii) provides the limitations set forth in subdivision (f)(4)(B)(i) may be waived by the client upon approval by the appropriate judge. This waiver provision may not be used to authorize a lawyer to charge a client a fee that would exceed rule 4-1.5(a) or (b). It is contemplated that this waiver provision will not be necessary except where the client wants to retain a particular lawyer to represent the client or the case involves complex, difficult, or novel questions of law or fact that would justify a contingent fee greater than the schedule but not a contingent fee that would exceed rule 4-1.5(b).
Upon a petition by a client, the trial court reviewing the waiver request must grant that request if the trial court finds the client: (a) understands the right to have the limitations in rule 4-1.5(f)(4)(B) applied in the specific matter; and (b) understands and approves the terms of the proposed contract. The consideration by the trial court of the waiver petition is not to be used as an opportunity for the court to inquire into the merits or details of the particular action or claim that is the subject of the contract.
The proceedings before the trial court and the trial court's decision on a waiver request are to be confidential and not subject to discovery by any of the parties to the action or by any other individual or entity except The Florida Bar. However, terms of the contract approved by the trial court may be subject to discovery if the contract (without court approval) was subject to discovery under applicable case law or rules of evidence.
Rule 4-1.5(f)(6) prohibits a lawyer from charging the contingent fee percentage on the total, future value of a recovery being *435 paid on a structured or periodic basis. This prohibition does not apply if the lawyer's fee is being paid over the same length of time as the schedule of payments to the client.
Contingent fees are prohibited in criminal and certain domestic relations matters. In domestic relations cases, fees that include a bonus provision or additional fee to be determined at a later time and based on results obtained have been held to be impermissible contingency fees and therefore subject to restitution and disciplinary sanction as elsewhere stated in these Rules Regulating The Florida Bar.
Fees that provide for a bonus or additional fees and that otherwise are not prohibited under the Rules Regulating The Florida Bar can be effective tools for structuring fees. For example, a fee contract calling for a flat fee and the payment of a bonus based on the amount of property retained or recovered in a general civil action is not prohibited by these rules. However, the bonus or additional fee must be stated clearly in amount or formula for calculation of the fee (basis or rate). Courts have held that unilateral bonus fees are unenforceable. The test of reasonableness and other requirements of this rule apply to permissible bonus fees.

Division of fee
[No Change]

Disputes over fees
[No Change]

Referral fees and practices
[No Change]

Credit Plans
[No Change]

RULE 4-1.6 CONFIDENTIALITY OF INFORMATION
(a) Consent Required to Reveal Information. A lawyer shall not reveal information relating to representation of a client except as stated in subdivisions (b), (c), and (d), unless the client consents after disclosure to the clientgives informed consent.
(b)-(e) [No Change]

Comment
The lawyer is part of a judicial system charged with upholding the law. One of the lawyer's functions is to advise clients so that they avoid any violation of the law in the proper exercise of their rights.
This rule governs the disclosure by a lawyer of information relating to the representation of a client during the lawyer's representation of the client. See rule 4-1.18 for the lawyer's duties with respect to information provided to the lawyer by a prospective client, rule 4-1.9(b) for the lawyer's duty not to reveal information relating to the lawyer's prior representation of a former client, and rules 4-1.8(b) and 4-1.9(b) for the lawyer's duties with respect to the use of such information to the disadvantage of clients and former clients.
The observance of the ethical obligation of a lawyer to hold inviolate confidential information of the client not only facilitates the full development of facts essential to proper representation of the client but also encourages people to seek early legal assistance.
Almost without exception, clients come to lawyers in order to determine what their rights are and what is, in the maze of laws and regulations, deemed to be legal and correct. The common law recognizes that the client's confidences must be protected from disclosure. Based upon experience, lawyers know that almost all clients follow the advice given, and the law is upheld.
*436 A fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer maintain confidentiality of must not reveal information relating to the representation. See terminology for the definition of informed consent. This contributes to the trust that is the hallmark of the client-lawyer relationship. The client is thereby encouraged to seek legal assistance and to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter. The lawyer needs this information to represent the client effectively and, if necessary, to advise the client to refrain from wrongful conduct. Almost without exception, clients come to lawyers in order to determine their rights and what is, in the complex of laws and regulations, deemed to be legal and correct. Based upon experience, lawyers know that almost all clients follow the advice given, and the law is upheld.
The principle of confidentiality is given effect in 2 related bodies of law, the attorney-client privilege (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or by law. However, none of the foregoing limits the requirement of disclosure in subdivision (b). This disclosure is required to prevent a lawyer from becoming an unwitting accomplice in the fraudulent acts of a client. See also Scope.
The requirement of maintaining confidentiality of information relating to representation applies to government lawyers who may disagree with the policy goals that their representation is designed to advance.

Authorized disclosure
[No Change]

Disclosure adverse to client
[No Change]

Withdrawal
[No Change]

Dispute concerning lawyer's conduct
A lawyer's confidentiality obligations do not preclude a lawyer from securing confidential legal advice about the lawyer's personal responsibility to comply with these rules. In most situations, disclosing information to secure such advice will be impliedly authorized for the lawyer to carry out the representation. Even when the disclosure is not impliedly authorized, subdivision (c)(5) permits such disclosure because of the importance of a lawyer's compliance with the Rules of Professional Conduct.
Where a legal claim or disciplinary charge alleges complicity of the lawyer in a client's conduct or other misconduct of the lawyer involving representation of the client, the lawyer may respond to the extent the lawyer reasonably believes necessary to establish a defense. The same is true with respect to a claim involving the conduct or representation of a former client. The lawyer's right to respond arises when an assertion of such complicity has been made. Subdivision (c) does not require the lawyer to await the commencement *437 of an action or proceeding that charges such complicity, so that the defense may be established by responding directly to a third party who has made such an assertion. The right to defend, of course, applies where a proceeding has been commenced. Where practicable and not prejudicial to the lawyer's ability to establish the defense, the lawyer should advise the client of the third party's assertion and request that the client respond appropriately. In any event, disclosure should be no greater than the lawyer reasonably believes is necessary to vindicate innocence, the disclosure should be made in a manner that limits access to the information to the tribunal or other persons having a need to know it, and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable.
If the lawyer is charged with wrongdoing in which the client's conduct is implicated, the rule of confidentiality should not prevent the lawyer from defending against the charge. Such a charge can arise in a civil, criminal, or professional disciplinary proceeding and can be based on a wrong allegedly committed by the lawyer against the client or on a wrong alleged by a third person; for example, a person claiming to have been defrauded by the lawyer and client acting together. A lawyer entitled to a fee is permitted by subdivision (c) to prove the services rendered in an action to collect it. This aspect of the rule expresses the principle that the beneficiary of a fiduciary relationship may not exploit it to the detriment of the fiduciary. As stated above, the lawyer must make every effort practicable to avoid unnecessary disclosure of information relating to a representation, to limit disclosure to those having the need to know it, and to obtain protective orders or make other arrangements minimizing the risk of disclosure.

Disclosures otherwise required or authorized
The attorney-client privilege is differently defined in various jurisdictions. If a lawyer is called as a witness to give testimony concerning a client, absent waiver by the client, rule 4-1.6(a) requires the lawyer to invoke the privilege when it is applicable. The lawyer must comply with the final orders of a court or other tribunal of competent jurisdiction requiring the lawyer to give information about the client.
The Rules of Professional Conduct in various circumstances permit or require a lawyer to disclose information relating to the representation. See rules 4-2.2, 4-2.3, 4-3.3, and 4-4.1. In addition to these provisions, a lawyer may be obligated or permitted by other provisions of law to give information about a client. Whether another provision of law supersedes rule 4-1.6 is a matter of interpretation beyond the scope of these rules, but a presumption should exist against such a supersession.

Former client
The duty of confidentiality continues after the client-lawyer relationship has terminated. See rule 4-1.9 for the prohibition against using such information to the disadvantage of the former client.

RULE 4-1.7 CONFLICT OF INTEREST; GENERAL RULECURRENT CLIENTS
(a) Representing Adverse Interests. AExcept as provided in subdivision (b), a lawyer shall not represent a client if:
(1) the representation of that 1 client will be directly adverse to the interests of another client, unless:; or
(12) the lawyer reasonably believes the there is a substantial risk that the representation of 1 or more clients will be *438 materially limited by will not adversely affect the lawyer's responsibilities to and relationship with the other another client; and, a former client or a third person or by a personal interest of the lawyer.
(2) each client consents after consultation.
(b) Duty to Avoid Limitation on Independent Professional Judgment. A lawyer shall not represent a client if the lawyer's exercise of independent professional judgment in the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person or by the lawyer's own interest, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after consultation.
(b) Notwithstanding the existence of a conflict of interest under subdivision (a), a lawyer may represent a client if:
(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a position adverse to another client when the lawyer represents both clients in the same proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing or clearly stated on the record at a hearing.
(c)  (e) [No Change]

Comment

Loyalty to a client
Loyalty is an and independent judgment are essential elements in the lawyer's relationship to a client. Conflicts of interest can arise from the lawyer's responsibilities to another client, a former client or a third person, or from the lawyer's own interests. For specific rules regarding certain conflicts of interest, see rule 4-1.8. For former client conflicts of interest, see rule 4-1.9. For conflicts of interest involving prospective clients, see rule 4-1.18. For definitions of "informed consent" and "confirmed in writing," see terminology.
An impermissible conflict of interest may exist before representation is undertaken, in which event the representation should be declined. If such a conflict arises after representation has been undertaken, the lawyer should withdraw from the representation. See rule 4-1.16. Where more than 1 client is involved and the lawyer withdraws because a conflict arises after representation, whether the lawyer may continue to represent any of the clients is determined by rule 4-1.9. See also rule 4-2.2(c). As to whether a client-lawyer relationship exists or, having once been established, is continuing, see comment to rule 4-1.3 and scope.
As a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client's or another client's interests without the affected client's consent. Subdivision (a)(1) expresses that general rule. Thus, a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated. On the other hand, simultaneous representation in unrelated matters of clients whose interests are only generally adverse, such as competing economic enterprises, does not require consent of the respective *439 clients. Subdivision (a)(1) applies only when the representation of 1 client would be directly adverse to the other and where the lawyer's responsibilities of loyalty and confidentiality of the other client might be compromised.
Loyalty to a client is also impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. Subdivision (b) addresses such situations. A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved.

Consultation and consent
A client may consent to representation notwithstanding a conflict. However, as indicated in subdivision (a)(1) with respect to representation directly adverse to a client and subdivision (a)(2) with respect to material limitations on representation of a client, when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for agreement or provide representation on the basis of the client's consent. When more than 1 client is involved, the question of conflict must be resolved as to each client. Moreover, there may be circumstances where it is impossible to make the disclosure necessary to obtain consent. For example, when the lawyer represents different clients in related matters and 1 of the clients refuses to consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to consent.

Lawyer's interests
[No Change]

Conflicts in litigation
Subdivision (a)(1) prohibits representation of opposing parties in litigation. Simultaneous representation of parties whose interests in litigation may conflict, such as co-plaintiffs or co-defendants, is governed by subdivisions (a), (b) and (c). An impermissible conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party, or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question. Such conflicts can arise in criminal cases as well as civil. The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than 1 co-defendant. On the other hand, common representation of persons having similar interests is proper if the risk of adverse effect is minimal and the requirements of subdivision (c) are met. Compare rule 4-2.2 involving intermediation between clients.
Ordinarily, a lawyer may not act as advocate against a client the lawyer represents in some other matter, even if the other matter is wholly unrelated. However, there are circumstances in which a lawyer may act as advocate against a client. For example, a lawyer representing an enterprise with diverse operations may accept employment as an advocate against the enterprise in an unrelated matter if doing so will not adversely affect the lawyer's relationship with the enterprise or *440 conduct of the suit and if both clients consent upon consultation. By the same token, government lawyers in some circumstances may represent government employees in proceedings in which a government agency is the opposing party. The propriety of concurrent representation can depend on the nature of the litigation. For example, a suit charging fraud entails conflict to a degree not involved in a suit for a declaratory judgment concerning statutory interpretation.
A lawyer may represent parties having antagonistic positions on a legal question that has arisen in different cases, unless representation of either client would be adversely affected. Thus, it is ordinarily not improper to assert such positions in cases pending in different trial courts, but it may be improper to do so in cases pending at the same time in an appellate court.

Interest of person paying for a lawyer's service
[No Change]

Other conflict situations
[No Change]

Conflict charged by an opposing party
[No Change]

Family relationships between lawyers
[No Change]

Representation of Insureds
[No Change]

Consent confirmed in writing or stated on the record at a hearing
Subdivision (b) requires the lawyer to obtain the informed consent of the client, confirmed in writing or clearly stated on the record at a hearing. With regard to being confirmed in writing, such a writing may consist of a document executed by the client or one that the lawyer promptly records and transmits to the client following an oral consent. See terminology. If it is not feasible to obtain or transmit the writing at the time the client gives informed consent, then the lawyer must obtain or transmit it within a reasonable time thereafter. See terminology. The requirement of a writing does not supplant the need in most cases for the lawyer to talk with the client, to explain the risks and advantages, if any, of representation burdened with a conflict of interest, as well as reasonably available alternatives, and to afford the client a reasonable opportunity to consider the risks and alternatives and to raise questions and concerns. Rather, the writing is required in order to impress upon clients the seriousness of the decision the client is being asked to make and to avoid disputes or ambiguities that might later occur in the absence of a writing.

RULE 4-1.8 CONFLICT OF INTEREST; PROHIBITED AND OTHER TRANSACTIONS
(a) Business Transactions With or Acquiring Interest Adverse to Client. A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, except a lien granted by law to secure a lawyer's fee or expenses, unless:
(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner that can be reasonably understood by the client;
(2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel inon the transaction; and

*441 (3) the client consents gives informed consent, in a writing thereto signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.
(b) Using Information to Disadvantage of Client. A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation gives informed consent, except as permitted or required by rule 4-1.6these rules.
(c) Gifts to Lawyer or Lawyer's Family. A lawyer shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of a client an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary unless the lawyer or other recipient of the gift, except where the client is related to the doneeclient. For purposes of this subdivision, related persons include a spouse, child, grandchild, parent, grandparent, or other relative with whom the lawyer or the client maintains a close, familial relationship.
(d)(e) [No Change]
(f) Compensation by Third Party. A lawyer shall not accept compensation for representing a client from one other than the client unless:
(1) the client consents after consultation gives informed consent;
(2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and
(3) information relating to representation of a client is protected as required by rule 4-1.6.
(g) Settlement of Claims for Multiple Clients. A lawyer who represents 2 or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client consents after consultation, including gives informed consent, in a writing signed by the client. The lawyer's disclosure of shall include the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.
(h)-(j) [No Change]
(k) While lawyers are associated in a firm, a prohibition in the foregoing subdivisions (a) through (i) that applies to any one of them shall apply to all of them.

Comment

Business tTransactions between client and lawyer
As a general principle, all transactions between client and lawyer should be fair and reasonable to the client. In such transactions a review by independent counsel on behalf of the client is often advisable. Furthermore, a lawyer may not exploit information relating to the representation to the client's disadvantage. For example, a lawyer who has learned that the client is investing in specific real estate may not, without the client's consent, seek to acquire nearby property where doing so would adversely affect the client's plan for investment. Subdivision (a)A lawyer's legal skill and training, together with the relationship of trust and confidence between lawyer and client, create the possibility of overreaching when the lawyer participates in a business, property, or financial transaction with a client. The requirements of subdivision (a) must be met even when the transaction *442 is not closely related to the subject matter of the representation. The rule applies to lawyers engaged in the sale of goods or services related to the practice of law. See rule 4-5.7. It does not apply to ordinary fee arrangements between client and lawyer, which are governed by rule 4-1.5, although its requirements must be met when the lawyer accepts an interest in the client's business or other nonmonetary property as payment for all or part of a fee. In addition, the rule does not, however, apply to standard commercial transactions between the lawyer and the client for products or services that the client generally markets to others, for example, banking or brokerage services, medical services, products manufactured or distributed by the client, and utilities services. In such transactions the lawyer has no advantage in dealing with the client, and the restrictions in subdivision (a) are unnecessary and impracticable. Likewise, subdivision (a) does not prohibit a lawyer from acquiring or asserting a lien granted by law to secure the lawyer's fee or expenses.
Subdivision (a)(1) requires that the transaction itself be fair to the client and that its essential terms be communicated to the client, in writing, in a manner that can be reasonably understood. Subdivision (a)(2) requires that the client also be advised, in writing, of the desirability of seeking the advice of independent legal counsel. It also requires that the client be given a reasonable opportunity to obtain such advice. Subdivision (a)(3) requires that the lawyer obtain the client's informed consent, in a writing signed by the client, both to the essential terms of the transaction and to the lawyer's role. When necessary, the lawyer should discuss both the material risks of the proposed transaction, including any risk presented by the lawyer's involvement, and the existence of reasonably available alternatives and should explain why the advice of independent legal counsel is desirable. See terminology (definition of informed consent).
The risk to a client is greatest when the client expects the lawyer to represent the client in the transaction itself or when the lawyer's financial interest otherwise poses a significant risk that the lawyer's representation of the client will be materially limited by the lawyer's financial interest in the transaction. Here the lawyer's role requires that the lawyer must comply, not only with the requirements of subdivision (a), but also with the requirements of rule 4-1.7. Under that rule, the lawyer must disclose the risks associated with the lawyer's dual role as both legal adviser and participant in the transaction, such as the risk that the lawyer will structure the transaction or give legal advice in a way that favors the lawyer's interests at the expense of the client. Moreover, the lawyer must obtain the client's informed consent. In some cases, the lawyer's interest may be such that rule 4-1.7 will preclude the lawyer from seeking the client's consent to the transaction.
If the client is independently represented in the transaction, subdivision (a)(2) of this rule is inapplicable, and the subdivision (a)(1) requirement for full disclosure is satisfied either by a written disclosure by the lawyer involved in the transaction or by the client's independent counsel. The fact that the client was independently represented in the transaction is relevant in determining whether the agreement was fair and reasonable to the client as subdivision (a)(1) further requires.

Gifts to lawyers
A lawyer may accept a gift from a client, if the transaction meets general standards of fairness and if the lawyer does not prepare the instrument bestowing the gift. For example, a simple gift such as a present *443 given at a holiday or as a token of appreciation is permitted. If a client offers the lawyer a more substantial gift, subdivision (c) does not prohibit the lawyer from accepting it, although such a gift may be voidable by the client under the doctrine of undue influence, which treats client gifts as presumptively fraudulent. In any event, due to concerns about overreaching and imposition on clients, a lawyer may not suggest that a substantial gift be made to the lawyer or for the lawyer's benefit, except where the lawyer is related to the client as set forth in subdivision (c). If effectuation of a substantial gift requires preparing a legal instrument such as a will or conveyance, however, the client should have the detached advice that another lawyer can provide and the lawyer should advise the client to seek advice of independent counsel. Subdivision (c) recognizes an exception where the client is a relative of the donee or the gift is not substantial.
This rule does not prohibit a lawyer from seeking to have the lawyer or a partner or associate of the lawyer named as personal representative of the client's estate or to another potentially lucrative fiduciary position. Nevertheless, such appointments will be subject to the general conflict of interest provision in rule 4-1.7 when there is a significant risk that the lawyer's interest in obtaining the appointment will materially limit the lawyer's independent professional judgment in advising the client concerning the choice of a personal representative or other fiduciary. In obtaining the client's informed consent to the conflict, the lawyer should advise the client concerning the nature and extent of the lawyer's financial interest in the appointment, as well as the availability of alternative candidates for the position.

Literary rights
An agreement by which a lawyer acquires literary or media rights concerning the conduct of the representation creates a conflict between the interests of the client and the personal interests of the lawyer. Measures suitable in the representation of the client may detract from the publication value of an account of the representation. Subdivision (d) does not prohibit a lawyer representing a client in a transaction concerning literary property from agreeing that the lawyer's fee shall consist of a share in ownership in the property if the arrangement conforms to rule 4-1.5 and subdivisions (a) and (i).

Financial assistance
Lawyers may not subsidize lawsuits or administrative proceedings brought on behalf of their clients, including making or guaranteeing loans to their clients for living expenses, because to do so would encourage clients to pursue lawsuits that might not otherwise be brought and because such assistance gives lawyers too great a financial stake in the litigation. These dangers do not warrant a prohibition on a lawyer advancing a client court costs and litigation expenses, including the expenses of medical examination and the reasonable costs of obtaining and presenting evidence, because these advances are virtually indistinguishable from contingent fees and help ensure access to the courts. Similarly, an exception allowing lawyers representing indigent clients to pay court costs and litigation expenses regardless of whether these funds will be repaid is warranted.

Person paying for lawyer's services
Rule 4-1.8(f) requires disclosure of the fact that the lawyer's services are being paid for by a third party. Such an arrangement must also conform to the requirements of rule 4-1.6 concerning confidentiality and rule 4-1.7 concerning conflict of interest. Where the client is *444 a class, consent may be obtained on behalf of the class by court supervised procedure.
Lawyers are frequently asked to represent a client under circumstances in which a third person will compensate the lawyer, in whole or in part. The third person might be a relative or friend, an indemnitor (such as a liability insurance company), or a co-client (such as a corporation sued along with one or more of its employees). Because third-party payers frequently have interests that differ from those of the client, including interests in minimizing the amount spent on the representation and in learning how the representation is progressing, lawyers are prohibited from accepting or continuing such representations unless the lawyer determines that there will be no interference with the lawyer's independent professional judgment and there is informed consent from the client. See also rule 4-5.4(d) (prohibiting interference with a lawyer's professional judgment by one who recommends, employs or pays the lawyer to render legal services for another).
Sometimes, it will be sufficient for the lawyer to obtain the client's informed consent regarding the fact of the payment and the identity of the third-party payer. If, however, the fee arrangement creates a conflict of interest for the lawyer, then the lawyer must comply with rule 4-1.7. The lawyer must also conform to the requirements of rule 4-1.6 concerning confidentiality. Under rule 4-1.7(a), a conflict of interest exists if there is significant risk that the lawyer's representation of the client will be materially limited by the lawyer's own interest in the fee arrangement or by the lawyer's responsibilities to the third-party payer (for example, when the third-party payer is a co-client). Under rule 4-1.7(b), the lawyer may accept or continue the representation with the informed consent of each affected client, unless the conflict is nonconsentable under that subdivision. Under rule 4-1.7(b), the informed consent must be confirmed in writing or clearly stated on the record at a hearing.

Aggregate settlements
Differences in willingness to make or accept an offer of settlement are among the risks of common representation of multiple clients by a single lawyer. Under rule 4-1.7, this is one of the risks that should be discussed before undertaking the representation, as part of the process of obtaining the clients' informed consent. In addition, rule 4-1.2(a) protects each client's right to have the final say in deciding whether to accept or reject an offer of settlement and in deciding whether to enter a guilty or nolo contendere plea in a criminal case. The rule stated in this subdivision is a corollary of both these rules and provides that, before any settlement offer or plea bargain is made or accepted on behalf of multiple clients, the lawyer must inform each of them about all the material terms of the settlement, including what the other clients will receive or pay if the settlement or plea offer is accepted. See also terminology (definition of informed consent). Lawyers representing a class of plaintiffs or defendants, or those proceeding derivatively, must comply with applicable rules regulating notification of class members and other procedural requirements designed to ensure adequate protection of the entire class.

Acquisition of interest in litigation
[No Change]

Representation of insureds
[No Change]

Imputation of prohibitions
Under subdivision (k), a prohibition on conduct by an individual lawyer in subdivisions *445 (a) through (i) also applies to all lawyers associated in a firm with the personally prohibited lawyer. For example, 1 lawyer in a firm may not enter into a business transaction with a client of another member of the firm without complying with subdivision (a), even if the first lawyer is not personally involved in the representation of the client.

RULE 4-1.9 CONFLICT OF INTEREST; FORMER CLIENT
A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultationgives informed consent; or
(b) use information relating to the representation to the disadvantage of the former client except as rule 4-1.6 would permit with respect to a client or when the information has become generally known. For purposes of this rule, "generally known" shall mean information of the type that a reasonably prudent lawyer would obtain from public records or through authorized processes for discovery of evidence.

Comment
After termination of a client-lawyer relationship, a lawyer may not represent another client except in conformity with this rule. The principles in rule 4-1.7 determine whether the interests of the present and former client are adverse. Thus, a lawyer could not properly seek to rescind on behalf of a new client a contract drafted on behalf of the former client. So also a lawyer who has prosecuted an accused person could not properly represent the accused in a subsequent civil action against the government concerning the same transaction.
The scope of a "matter" for purposes of rule 4-1.9(a) may depend on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client. Similar considerations can apply to the reassignment of military lawyers between defense and prosecution functions within the same military jurisdiction. The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.
Matters are "substantially related" for purposes of this rule if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client. For example, a lawyer who has previously represented a client in securing environmental permits to build a shopping center would be precluded from representing neighbors seeking to oppose rezoning of the property on the basis of environmental considerations; however, the lawyer would not be precluded, on the grounds of substantial relationship, from defending a tenant of the completed shopping center in resisting eviction for nonpayment of rent.
Lawyers owe confidentiality obligations to former clients, and thus Iinformation *446 acquired by the lawyer in the course of representing a client may not subsequently be used by the lawyer to the disadvantage of the client without the former client's consent. For example, a lawyer who has represented a businessperson and learned extensive private financial information about that person may not then represent that person's spouse in seeking a divorce. However, the fact that a lawyer has once served a client does not preclude the lawyer from using generally known information, as defined in rule 4-1.9(b), about that client when later representing another client. Information that has been widely disseminated by the media to the public, or that typically would be obtained by any reasonably prudent lawyer who had never represented the former client, should be considered generally known and ordinarily will not be disqualifying. The essential question is whether, but for having represented the former client, the lawyer would know or discover the information.
Information acquired in a prior representation may have been rendered obsolete by the passage of time. In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation. A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.
Disqualification from subsequent representation is The provisions of this rule are for the protection of clients and can be waived by them. A waiver is effective only if there is disclosure of the circumstances, including the lawyer's intended role in behalf of the new clientif the former client gives informed consent. See terminology.
With regard to an opposing party's raising a question of conflict of interest, see comment to rule 4-1.7. With regard to disqualification of a firm with which a lawyer is associated, see rule 4-1.10.

RULE 4-1.10 IMPUTED DISQUALIFICATIONIMPUTATION OF CONFLICTS OF INTEREST; GENERAL RULE
(a) Imputed Disqualification of All Lawyers in Firm. While lawyers are associated in a firm, none of them shall knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4-1.7, 4-1.8(c), or 4-1.9, or 4-2.2 except as provided elsewhere in this rule, or unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.
(b)(d) [No Change]
(e) Government Lawyers. The disqualification of lawyers associated in a firm with former or current government lawyers is governed by rule 4-1.11.

Comment

Definition of "firm"
For purposes of the Rules of Professional Conduct, the term "firm" includes lawyers in a private firm and lawyers employed in the legal department of a corporation or other organization or in a legal services organization. Whether 2 or more lawyers constitute a firm within this definition *447 can depend on the specific facts. For example, 2 practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm. However, if they present themselves to the public in a way suggesting that they are a firm or conduct themselves as a firm, they should be regarded as a firm for purposes of the rules. The terms of any formal agreement between associated lawyers are relevant in determining whether they are a firm, as is the fact that they have mutual access to confidential information concerning the clients they serve. Furthermore, it is relevant in doubtful cases to consider the underlying purpose of the rule that is involved. A group of lawyers could be regarded as a firm for purposes of the rule that the same lawyer should not represent opposing parties in litigation, while it might not be so regarded for purposes of the rule that information acquired by one lawyer is attributed to another.
With respect to the law department of an organization, there is ordinarily no question that the members of the department constitute a firm within the meaning of the Rules of Professional Conduct. However, there can be uncertainty as to the identity of the client. For example, it may not be clear whether the law department of a corporation represents a subsidiary or an affiliated corporation, as well as the corporation by which the members of the department are directly employed. A similar question can arise concerning an unincorporated association and its local affiliates.
Similar questions can also arise with respect to lawyers in legal aid. Lawyers employed in the same unit of a legal service organization constitute a firm, but not necessarily those employed in separate units. As in the case of independent practitioners, whether the lawyers should be treated as associated with each other can depend on the particular rule that is involved and on the specific facts of the situation.
Where a lawyer has joined a private firm after having represented the government, the situation is governed by rule 4-1.11(a) and (b); where a lawyer represents the government after having served private clients, the situation is governed by rule 4-1.11(c)(1). The individual lawyer involved is bound by the rules generally, including rules 4-1.6, 4-1.7, and 4-1.9.
Different provisions are thus made for movement of a lawyer from 1 private firm to another and for movement of a lawyer between a private firm and the government. The government is entitled to protection of its client confidences and, therefore, to the protections provided in rules 4-1.6, 4-1.9, and 4-1.11. However, if the more extensive disqualification in rule 4-1.10 were applied to former government lawyers, the potential effect on the government would be unduly burdensome. The government deals with all private citizens and organizations and thus has a much wider circle of adverse legal interests than does any private law firm. In these circumstances, the government's recruitment of lawyers would be seriously impaired if rule 4-1.10 were applied to the government. On balance, therefore, the government is better served in the long run by the protections stated in rule 4-1.11.

Principles of imputed disqualification
The rule of imputed disqualification stated in subdivision (a) gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations can be considered from the premise that a firm of lawyers is essentially 1 lawyer for purposes of the rules governing loyalty to the client or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by *448 each lawyer with whom the lawyer is associated. Subdivision (a) operates only among the lawyers currently associated in a firm. When a lawyer moves from 1 firm to another the situation is governed by subdivisions (b) and (c).
The rule in subdivision (a) does not prohibit representation where neither questions of client loyalty nor protection of confidential information are presented. Where 1 lawyer in a firm could not effectively represent a given client because of strong political beliefs, for example, but that lawyer will do no work on the case and the personal beliefs of the lawyer will not materially limit the representation by others in the firm, the firm should not be disqualified. On the other hand, if an opposing party in a case were owned by a lawyer in the law firm, and others in the firm would be materially limited in pursuing the matter because of loyalty to that lawyer, the personal disqualification of the lawyer would be imputed to all others in the firm.
The rule in subdivision (a) also does not prohibit representation by others in the law firm where the person prohibited from involvement in a matter is a nonlawyer, such as a paralegal or legal secretary. Such persons, however, ordinarily must be screened from any personal participation in the matter to avoid communication to others in the firm of confidential information that both the nonlawyers and the firm have a legal duty to protect. See terminology and rule 4-5.3.

Lawyers moving between firms
[No Change]

Confidentiality
[No Change]

Adverse positions
The second aspect of loyalty to client is the lawyer's obligation to decline subsequent representations involving positions adverse to a former client arising in substantially related matters. This obligation requires abstention from adverse representation by the individual lawyer involved, but does not properly entail abstention of other lawyers through imputed disqualification. Hence, this aspect of the problem is governed by rule 4-1.9(a). Thus, if a lawyer left 1 firm for another, the new affiliation would not preclude the firms involved from continuing to represent clients with adverse interests in the same or related matters so long as the conditions of rule 4-1.10(b) and (c) concerning confidentiality have been met.
Rule 4-1.10(d) removes imputation with the informed consent of the affected client or former client under the conditions stated in rule 4-1.7. The conditions stated in rule 4-1.7 require the lawyer to determine that the representation is not prohibited by rule 4-1.7(b) and that each affected client or former client has given informed consent to the representation, confirmed in writing or clearly stated on the record. In some cases, the risk may be so severe that the conflict may not be cured by client consent. For a definition of informed consent, see terminology.
Where a lawyer is prohibited from engaging in certain transactions under rule 4-1.8, subdivision (k) of that rule, and not this rule, determines whether that prohibition also applies to other lawyers associated in a firm with the personally prohibited lawyer.

RULE 4-1.11 SUCCESSIVE SPECIAL CONFLICTS OF INTEREST FOR FORMER AND CURRENT GOVERNMENT OFFICERS AND PRIVATE EMPLOYMENTEMPLOYEES
(a) Representation of Private Client by Former Public Officer or Employee. *449 A lawyer who has formerly served as a public officer or employee of the government:
(1) is subject to rule 4-1.9(b); and
(2) shall not otherwise represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation gives its informed consent, confirmed in writing, to the representation.
(b) Representation by Another Member of the Firm. No When a lawyer is disqualified from representation under subdivision (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:
(1) the disqualified lawyer is timely screened from any participation in the matter and is directly apportioned no part of the fee therefrom; and
(2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.
(bc) Use of Confidential Government Information. A lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person. As used in this rule, the term "confidential government information" means information that has been obtained under governmental authority and which, at the time this rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and which is not otherwise available to the public. A firm with which that lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom.
(cd) Limits on Participation of Public Officer or Employee. A lawyer currently serving as a public officer or employee shall not:
(1) is subject to rules 4-1.7 and 4-1.9; and
(2) shall not:
(1A ) participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in the matterthe appropriate government agency gives its informed consent; or
(2B ) negotiate for private employment with any person who is involved as a party or as attorney for a party in a matter in which the lawyer is participating personally and substantially.
(de) Matter Defined. As used in this rule, the term "matter" includes:
(1) any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest, or other particular matter involving a specific party or parties; and
(2) any other matter covered by the conflict of interest rules of the appropriate government agency.
(e) Confidential Government Information Defined. As used in this rule, the term "confidential government information" means information that has been obtained under governmental authority and *450 that, at the time this rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and that is not otherwise available to the public.

Comment
This rule prevents a lawyer from exploiting public office for the advantage of a private client. It is a counterpart of rule 4-1.10(b), which applies to lawyers moving from 1 firm to another.
A lawyer representing a government agency, whether employed or specially retained by the government, who has served or is currently serving as a public officer or employee is personally subject to the rules of professional conduct, including the prohibition against representing adverse interests concurrent conflicts of interest stated in rule 4-1.7 and the protections afforded former clients in rule 4-1.9. In addition, such a lawyer ismay be subject to rule 4-1.11 and to statutes and government regulations regarding conflict of interest. Such statutes and regulations may circumscribe the extent to which the government agency may give consent under this rule. See terminology for definition of informed consent.
Subdivisions (a)(1), (a)(2), and (d)(1) restate the obligations of an individual lawyer who has served or is currently serving as an officer or employee of the government toward a former government or private client. Rule 4-1.10 is not applicable to the conflicts of interest addressed by this rule. Rather, subdivision (b) sets forth a special imputation rule for former government lawyers that provides for screening and notice. Because of the special problems raised by imputation within a government agency, subdivision (d) does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees, although ordinarily it will be prudent to screen such lawyers.
Subdivisions (a)(2) and (d)(2) apply regardless of whether a lawyer is adverse to a former client and are thus designed not only to protect the former client, but also to prevent a lawyer from exploiting public office for the advantage of another client. For example, a lawyer who has pursued a claim on behalf of the government may not pursue the same claim on behalf of a later private client after the lawyer has left government service, except when authorized to do so by the government agency under subdivision (a). Similarly, a lawyer who has pursued a claim on behalf of a private client may not pursue the claim on behalf of the government, except when authorized to do so by subdivision (d). As with subdivisions (a)(1) and (d)(1), rule 4-1.10 is not applicable to the conflicts of interest addressed by these subdivisions.
Where This rule represents a balancing of interests. On the one hand, where the successive clients are a public government agency and a private another client, public or private, the risk exists that power or discretion vested in public authoritythat agency might be used for the special benefit of a privatethe other client. A lawyer should not be in a position where benefit to a privatethe other client might affect performance of the lawyer's professional functions on behalf of public authoritythe government. Also, unfair advantage could accrue to the privateother client by reason of access to confidential government information about the client's adversary obtainable only through the lawyer's government service. However,On the other hand, the rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government. The government has a legitimate *451 need to attract qualified lawyers as well as to maintain high ethical standards. Thus, a former government lawyer is disqualified only from particular matters in which the lawyer participated personally and substantially. The provisions for screening and waiver in subdivision (b) are necessary to prevent the disqualification rule from imposing too severe a deterrent against entering public service. The limitation of disqualification in subdivisions (a)(2) and (d)(2) to matters involving a specific party or parties, rather than extending disqualification to all substantive issues on which the lawyer worked, serves a similar function.
When the client is an agency ofa lawyer has been employed by 1 government agency and then moves to a second government agency, it may be appropriate to treat that second, the agency should be treated as a privateanother client for purposes of this rule if the lawyer thereafter represents an agency of another government, as when a lawyer representsis employed by a city and subsequently is employed by a federal agency. However, because the conflict of interest is governed by subdivision (d), the latter agency is not required to screen the lawyer as subdivision (b) requires a law firm to do. The question of whether 2 government agencies should be regarded as the same or different clients for conflict of interest purposes is beyond the scope of these rules. See rule 4-1.13 comment, government agency.
Subdivisions (a)(1) and (b) and (c) contemplate a screening arrangement. See terminology (requirements for screening procedures). These subdivisions do not prohibit a lawyer from receiving a salary or partnership share established by prior independent agreement. They prohibit, but that lawyer may not receive compensation directly relating the attorney's compensation to the fee in the matter in which the lawyer is disqualified.
Notice, including a description of the screened lawyer's prior representation and of the screening procedures employed, generally should be given as soon as practicable after the need for screening becomes apparent.
Subdivision (a)(2) does not require that a lawyer give notice to the government agency at a time when premature disclosure would injure the client; a requirement for premature disclosure might preclude engagement of the lawyer. Such notice is, however, required to be given as soon as practicable in order that the government agency or affected person will have a reasonable opportunity to ascertain that the lawyer is complying with rule 4-1.11 and to take appropriate action if the agency or person believes the lawyer is not complying.
Subdivision (bc ) operates only when the lawyer in question has knowledge of the information, which means actual knowledge; it does not operate with respect to information that merely could be imputed to the lawyer.
Subdivisions (a) and (cd ) do not prohibit a lawyer from jointly representing a private party and a government agency when doing so is permitted by rule 4-1.7 and is not otherwise prohibited by law.
Subdivision (c) does not disqualify other lawyers in the agency with which the lawyer in question has become associated.
For purposes of subdivision (e) of this rule, a "matter" may continue in another form. In determining whether 2 particular matters are the same, the lawyer should consider the extent to which the matters involve the same basic facts, the same or related parties, and the time elapsed.

*452 RULE 4-1.12 FORMER JUDGE OR ARBITRATOR, MEDIATOR OR OTHER THIRD-PARTY NEUTRAL
(a) Representation of Private Client by Former Judge, Arbitrator, or Law Clerk, or Other Third-Party Neutral. Except as stated in subdivision (d), a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator, or law clerk to such a person or as an arbitrator, mediator, or other third-party neutral, unless all parties to the proceeding give informed consent after disclosure, confirmed in writing.
(b) Negotiation of Employment by Judge, Arbitrator, orLaw Clerk, or Other Third-Party Neutral. A lawyer shall not negotiate for employment with any person who is involved as a party or as attorney for a party in a matter in which the lawyer is participating personally and substantially as a judge or other adjudicative officer or as an arbitrator, mediator, or other third-party neutral. A lawyer serving as a law clerk to a judge, or other adjudicative officer, or arbitrator may negotiate for employment with a party or attorney involved in a matter in which the clerk is participating personally and substantially, but only after the lawyer has notified the judge, or other adjudicative officer, or arbitrator.
(c) Imputed Disqualification of Law Firm. If a lawyer is disqualified by subdivision (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless:
(1) the disqualified lawyer is timely screened from any participation in the matter and is directly apportioned no part of the fee therefrom; and
(2) written notice is promptly given to the parties and any appropriate tribunal to enable it to ascertain compliance with the provisions of this rule.
(d) [No Change]

Comment
This rule generally parallels rule 4-1.11. The term "personally and substantially" signifies that a judge who was a member of a multimember court, and thereafter left judicial office to practice law, is not prohibited from representing a client in a matter pending in the court, but in which the former judge did not participate. So also the fact that a former judge exercised administrative responsibility in a court does not prevent the former judge from acting as a lawyer in a matter where the judge had previously exercised remote or incidental administrative responsibility that did not affect the merits. Compare the comment to rule 4-1.11. The term "adjudicative officer" includes such officials as judges pro tempore, referees, special masters, hearing officers, and other parajudicial officers and also lawyers who serve as part-time judges. Compliance Canons A(2), B(2), and C of Florida's Code of Judicial Conduct provide that a part-time judge, judge pro tempore, or retired judge recalled to active service may not "act as a lawyer in a proceeding in which [the lawyer] has served as a judge or in any other proceeding related thereto." Although phrased differently from this rule, those rules correspond in meaning.
Like former judges, lawyers who have served as arbitrators, mediators, or other third-party neutrals may be asked to represent a client in a matter in which the lawyer participated personally and substantially. This rule forbids such representation unless all of the parties to the proceedings give their informed consent, confirmed in writing. See terminology. Other law or codes of ethics governing *453 third-party neutrals may impose more stringent standards of personal or imputed disqualification. See rule 4-2.4.
Although lawyers who serve as third-party neutrals do not have information concerning the parties that is protected under rule 4-1.6, they typically owe the parties an obligation of confidentiality under law or codes of ethics governing third-party neutrals. Thus, subdivision (c) provides that conflicts of the personally disqualified lawyer will be imputed to other lawyers in a law firm unless the conditions of this subdivision are met.
Requirements for screening procedures are stated in terminology. Subdivision (c)(1) does not prohibit the screened lawyer from receiving a salary or partnership share established by prior independent agreement, but that lawyer may not receive compensation directly related to the matter in which the lawyer is disqualified.
Notice, including a description of the screened lawyer's prior representation and of the screening procedures employed, generally should be given as soon as practicable after the need for screening becomes apparent.
A Florida Bar member who is a certified mediator is governed by the applicable law and rules relating to certified mediators.

RULE 4-1.13 ORGANIZATION AS CLIENT
(a)(c) [No Change]
(d) Identification of Client. In dealing with an organization's directors, officers, employees, members, shareholders, or other constituents, a lawyer shall explain the identity of the client when it is apparentthe lawyer knows or reasonably should know that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing.
(e) [No Change]

Comment

The entity as the client
An organizational client is a legal entity, but it cannot act except through its officers, directors, employees, shareholders, and other constituents. Officers, directors, employees, and shareholders are the constituents of the corporate organizational client. The duties defined in this comment apply equally to unincorporated associations. "Other constituents" as used in this comment means the positions equivalent to officers, directors, employees, and shareholders held by persons acting for organizational clients that are not corporations.
When 1 of the constituents of an organizational client communicates with the organization's lawyer in that person's organizational capacity, the communication is protected by rule 4-1.6. Thus, by way of example, if an organizational client requests its lawyer to investigate allegations of wrongdoing, interviews made in the course of that investigation between the lawyer and the client's employees or other constituents are covered by rule 4-1.6. This does not mean, however, that constituents of an organizational client are the clients of the lawyer. The lawyer may not disclose to such constituents information relating to the representation except for disclosures explicitly or impliedly authorized by the organizational client in order to carry out the representation or as otherwise permitted by rule 4-1.6.
When constituents of the organization make decisions for it, the decisions ordinarily must be accepted by the lawyer even if their utility or prudence is doubtful. Decisions concerning policy and operations, including ones entailing serious risk, *454 are not as such in the lawyer's province. However, different considerations arise when the lawyer knows that the organization may be substantially injured by action of a constituent that is in violation of law. In such a circumstance, it may be reasonably necessary for the lawyer to ask the constituent to reconsider the matter. If that fails, or if the matter is of sufficient seriousness and importance to the organization, it may be reasonably necessary for the lawyer to take steps to have the matter reviewed by a higher authority in the organization. Clear justification should exist for seeking review over the head of the constituent normally responsible for it. The stated policy of the organization may define circumstances and prescribe channels for such review, and a lawyer should encourage the formulation of such a policy. Even in the absence of organization policy, however, the lawyer may have an obligation to refer a matter to higher authority, depending on the seriousness of the matter and whether the constituent in question has apparent motives to act at variance with the organization's interest. Review by the chief executive officer or by the board of directors may be required when the matter is of importance commensurate with their authority. At some point it may be useful or essential to obtain an independent legal opinion.
In an extreme case, it may be reasonably necessary for the lawyer to refer the matter to tThe organization's highest authority. Ordinarily, that is to whom a matter may be referred ordinarily will be the board of directors or similar governing body. However, applicable law may prescribe that under certain conditions highest authority reposes elsewhere; for example, in the independent directors of a corporation.

Relation to other rules
The authority and responsibility provided in subdivision (b) this rule are concurrent with the authority and responsibility provided in other rules. In particular, this rule does not limit or expand the lawyer's responsibility under rule 4-1.6, 4-1.8, 4-1.16, 4-3.3, or 4-4.1. If the lawyer's services are being used by an organization to further a crime or fraud by the organization, rule 4-1.2(d) can be applicable.

Government agency
The duty defined in this rule applies to governmental organizations. However, when the client is a governmental organization, a different balance may be appropriate between maintaining confidentiality and assuring that the wrongful official act is prevented or rectified, for public business is involved. In addition, duties of lawyers employed by the government or lawyers in military service may be defined by statutes and regulation. Therefore, dDefining precisely the identity of the client and prescribing the resulting obligations of such lawyers may be more difficult in the government context and is a matter beyond the scope of these rules. Although in some circumstances the client may be a specific agency, it is generally may also be a branch of the government, such as the executive branch, or the government as a whole. For example, if the action or failure to act involves the head of a bureau, either the department of which the bureau is a part or the relevant branch of government as a whole may be the client for purposes of this rule. Moreover, in a matter involving the conduct of government officials, a government lawyer may have authority under applicable law to question such conduct more extensively than that of a lawyer for a private organization in similar circumstances. This rule does not limit that authority. See note on scope.
*455 Clarifying the lawyer's role
[No Change]
Dual representation
[No Change]
Derivative actions
[No Change]
Representing related organizations
Consistent with the principle expressed in subdivision (a) of this rule, an attorney lawyer or law firm who represents or has represented a corporation (or other organization) ordinarily is not presumed to also represent, solely by virtue of representing or having represented the client, an organization (such as a corporate parent or subsidiary) that is affiliated with the client. There are exceptions to this general proposition, such as, for example, when an affiliate actually is the alter ego of the organizational client or when the client has revealed confidential information to an attorney with the reasonable expectation that the information would not be used adversely to the client's affiliate(s). Absent such an exception, an attorney or law firm is not ethically precluded from undertaking representations adverse to affiliates of an existing or former client.

RULE 4-1.16 DECLINING OR TERMINATING REPRESENTATION
(a) When Lawyer Must Decline or Terminate Representation. Except as stated in subdivision (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
(1) the representation will result in violation of the Rules of Professional Conduct or law;
(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or
(3) the lawyer is discharged;
(4) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent, unless the client agrees to disclose and rectify the crime or fraud; or
(5) the client has used the lawyer's services to perpetrate a crime or fraud, unless the client agrees to disclose and rectify the crime or fraud.
(b) When Withdrawal Is Allowed. Except as stated in subdivision (c), a lawyer may withdraw from representing a client if:
(1) withdrawal can be accomplished without material adverse effect on the interests of the client, or if:;
(1) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;
(2) the client has used the lawyer's services to perpetrate a crime or fraud;
(32) the client insists upon pursuing an objectivetaking action that the lawyer considers repugnant, or imprudent, or with which the lawyer has a fundamental disagreement;
(43) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;
(54) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or
(65) other good cause for withdrawal exists.
*456 (c) Compliance With Order of Tribunal. A lawyer must comply with applicable law requiring notice or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.
(d) Protection of Client's Interest. Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers and other property relating to or belonging to the client to the extent permitted by law.

Comment
A lawyer should not accept representation in a matter unless it can be performed competently, promptly, without improper conflict of interest, and to completion. Ordinarily, a representation in a matter is completed when the agreed-upon assistance has been concluded. See rule 4-1.2, and the comment to rule 4-1.3.

Mandatory withdrawal
A lawyer ordinarily must decline or withdraw from representation if the client demands that the lawyer engage in conduct that is illegal or violates the Rules of Professional Conduct or law. The lawyer is not obliged to decline or withdraw simply because the client suggests such a course of conduct; a client may make such a suggestion in the hope that a lawyer will not be constrained by a professional obligation. Withdrawal is also mandatory if the client persists in a course of action that the lawyer reasonably believes is criminal or fraudulent, unless the client agrees to disclose and rectify the crime or fraud. Withdrawal is also required if the lawyer's services were misused in the past even if that would materially prejudice the client.
When a lawyer has been appointed to represent a client, withdrawal ordinarily requires approval of the appointing authority. See also rule 4-6.2. Similarly, court approval or notice to the court is often required by applicable law before a lawyer withdraws from pending litigation. Difficulty may be encountered if withdrawal is based on the client's demand that the lawyer engage in unprofessional conduct. The court may wishrequest an explanation for the withdrawal, while the lawyer may be bound to keep confidential the facts that would constitute such an explanation. The lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient. Lawyers should be mindful of their obligations to both clients and the court under rules 4-1.6 and 4-3.3.

Discharge
A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services. Where future dispute about the withdrawal may be anticipated, it may be advisable to prepare a written statement reciting the circumstances.
Whether a client can discharge appointed counsel may depend on applicable law. A client seeking to do so should be given a full explanation of the consequences. These consequences may include a decision by the appointing authority that appointment of successor counsel is unjustified, thus requiring the client to be self-represented.
If the client is mentally incompetent, the client may lack the legal capacity to discharge *457 the lawyer, and in any event the discharge may be seriously adverse to the client's interests. The lawyer should make special effort to help the client consider the consequences and, in an extreme case, may initiate proceedings for a conservatorship or similar protection of the client. Seetake reasonably necessary protective action as provided in rule 4-1.14.

Optional withdrawal
A lawyer may withdraw from representation in some circumstances. The lawyer has the option to withdraw if it can be accomplished without material adverse effect on the client's interests. Withdrawal is also justified if the client persists in a course of action that the lawyer reasonably believes is criminal or fraudulent, for a lawyer is not required to be associated with such conduct even if the lawyer does not further it. Withdrawal is also permitted if the lawyer's services were misused in the past even if that would materially prejudice the client. The lawyer also may withdraw where the client insists on ataking action that the lawyer considers repugnant, or imprudent, objectiveor with which the lawyer has a fundamental disagreement.
A lawyer may withdraw if the client refuses to abide by the terms of an agreement relating to the representation, such as an agreement concerning fees or court costs or an agreement limiting the objectives of the representation.

Assisting the client upon withdrawal
Even if the lawyer has been unfairly discharged by the client, a lawyer must take all reasonable steps to mitigate the consequences to the client. The lawyer may retain papers and other property as security for a fee only to the extent permitted by law.
Whether a lawyer for an organization may under certain unusual circumstances have a legal obligation to the organization after withdrawing or being discharged by the organization's highest authority is beyond the scope of these rules.

Refunding advance payment of unearned fee
[No Change]

RULE 4-1.17 SALE OF LAW PRACTICE
A lawyer or a law firm may sell or purchase a law practice, or an area of practice, including good will, provided that:
(a) Sale of Practice or Area of Practice as an Entirety. The entire practice, or the entire area of practice, is sold as an entirety to a single purchaser, which is another lawyer1 or more lawyers or law firms authorized to practice law in Florida.
(b)(f) [No Change]

Comment
The practice of law is a profession, not merely a business. Clients are not commodities that can be purchased and sold at will. In accordance with the requirements of this rule, when a lawyer or an entire firm sells the practice and another lawyers or firms takes over the representation, the selling lawyer or firm may obtain compensation for the reasonable value of the practice as may withdrawing partners of law firms. See rules 4-5.4 and 4-5.6.

Single purchaser
The requirement that all of the private practice, or all of an area of practice, be sold is satisfied if the seller in good faith makes the entire practice, or area of practice, available for sale to the purchasers. The fact that a number of the seller's clients decide not to be represented by the purchasers but take their matters elsewhere, therefore, does not result in a violation. Similarly, a violation does not occur *458 merely because a court declines to approve the substitution of counsel in the cases of a number of clients who could not be served with written notice of the proposed sale.

Sale of entire practice or entire area of practice
The rule requires that the seller's entire practice, or an area of practice, be sold as an entirety to a single purchaser. The prohibition against piecemeal sale of aless than an entire practice area protects those clients whose matters are less lucrative and who might find it difficult to secure other counsel if a sale could be limited to substantial fee-generating matters. The purchasers isare required to undertake all client matters in the practice, or practice area, subject to client consent or court authorization. IfThis requirement is satisfied, however, theeven if a purchaser is unable to undertake alla particular client matters because of a conflict of interest in a specific matter respecting which the purchaser is not permitted by rule 4-1.7 or another rule to represent the client, the requirement that there be a single purchaser is nevertheless satisfied.

Client confidences, consent, and notice
Negotiations between seller and prospective purchaser prior to disclosure of information relating to a specific representation of an identifiable client do not violate the confidentiality provisions of rule 4-1.6 any more than do preliminary discussions concerning the possible association of another lawyer or mergers between firms, with respect to which client consent ordinarily is not required. Providing the prospective purchaser access to client-specific information relating to the representation and to the file, however, requires client consent or court authorization. See rule 4-1.6. Rule 4-1.17 provides that the seller must attempt to serve each client with written notice of the contemplated sale, including the identity of the purchaser and the fact that the decision to consent to the substitution of counsel or to make other arrangements must be made within 30 days. If nothing is heard within that time from a client who was served with written notice of the proposed sale, that client's consent to the substitution of counsel is presumed. However, with regard to clients whose matters involve pending litigation but who could not be served with written notice of the proposed sale, authorization of the court is required before the files and client-specific information relating to the representation of those clients may be disclosed by the seller to the purchaser and before counsel may be substituted.
A lawyer or law firm selling a practice cannot be required to remain in practice just because some clients cannot be served with written notice of the proposed sale. Because these clients cannot themselves consent to the substitution of counsel or direct any other disposition of their representations and files, with regard to clients whose matters involve pending litigation the rule requires an order from the court authorizing the substitution (or withdrawal) of counsel. The court can be expected to determine whether reasonable efforts to locate the client have been exhausted, and whether the absent client's legitimate interests will be served by authorizing the substitution of counsel so that the purchaser may continue the representation. Preservation of client confidences requires that the petition for a court order be considered in camera. If, however, the court fails to grant substitution of counsel in a matter involving pending litigation, that matter shall not be included in the sale and the sale may be consummated without inclusion of that matter.
The rule provides that matters not involving pending litigation of clients who *459 could not be served with written notice may not be included in the sale. This is because the clients' consent to disclosure of confidential information and to substitution of counsel cannot be obtained and because the alternative of court authorization ordinarily is not available in matters not involving pending litigation. Although such matters shall not be included in the sale, the sale may be consummated without inclusion of those matters.
If a client objects to the proposed substitution of counsel, the rule treats the seller as attempting to withdraw from representation of that client and, therefore, provides that the seller must comply with the provisions of rule 4-1.16 concerning withdrawal from representation. Additionally, the seller must comply with applicable requirements of law or rules of procedure.
All the elements of client autonomy, including the client's absolute right to discharge a lawyer and transfer the representation to another, survive the sale of the practice or an area of practice.

Fee arrangements between client and purchaser
[No Change]

Other applicable ethical standards
Lawyers participating in the sale of a law practice or a practice area are subject to the ethical standards applicable to involving another lawyer in the representation of a client for all matters pending at the time of the sale. These include, for example, the seller's ethical obligation to exercise competence in identifying a purchaser qualified to assume the practice and the purchaser's obligation to undertake the representation competently (see rule 4-1.1); the obligation to avoid disqualifying conflicts, and to secure the client's informed consent after consultation for those conflicts that can be agreed to (see rule 4-1.7 regarding conflicts and see the terminology section of the preamble for the definition of informed consent ); and the obligation to protect information relating to the representation (see rules 4-1.6, 4-1.8(b), and 4-1.9(b)). If the terms of the sale involve the division between purchaser and seller of fees from matters that arise subsequent to the sale, the fee-division provisions of rule 4-1.5 must be satisfied with respect to such fees. These provisions will not apply to the division of fees from matters pending at the time of sale.
If approval of the substitution of the purchasing attorney for the selling attorney is required by the rules of any tribunal in which a matter is pending, such approval must be obtained before the matter can be included in the sale (see rule 4-1.16).

Applicability of this rule
[No Change]

RULE 4-1.18 DUTIES TO PROSPECTIVE CLIENT
(a) Prospective Client. A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
(b) Confidentiality of Information. Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as rule 4-1.9 would permit with respect to information of a former client.
(c) Subsequent Representation. A lawyer subject to subdivision (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be used to the *460 disadvantage of that person in the matter, except as provided in subdivision (d). If a lawyer is disqualified from representation under this rule, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in subdivision (d).
(d) Permissible Representation. When the lawyer has received disqualifying information as defined in subdivision (c), representation is permissible if:
(1) both the affected client and the prospective client have given informed consent, confirmed in writing; or
(2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and
(i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
(ii) written notice is promptly given to the prospective client.

Comment
Prospective clients, like clients, may disclose information to a lawyer, place documents or other property in the lawyer's custody, or rely on the lawyer's advice. A lawyer's discussions with a prospective client usually are limited in time and depth and leave both the prospective client and the lawyer free (and the lawyer sometimes required) to proceed no further. Hence, prospective clients should receive some but not all of the protection afforded clients.
Not all persons who communicate information to a lawyer are entitled to protection under this rule. A person who communicates information unilaterally to a lawyer, without any reasonable expectation that the lawyer is willing to discuss the possibility of forming a client-lawyer relationship, is not a "prospective client" within the meaning of subdivision (a).
It is often necessary for a prospective client to reveal information to the lawyer during an initial consultation prior to the decision about formation of a client-lawyer relationship. The lawyer often must learn such information to determine whether there is a conflict of interest with an existing client and whether the matter is one that the lawyer is willing to undertake. Subdivision (b) prohibits the lawyer from using or revealing that information, except as permitted by rule 4-1.9, even if the client or lawyer decides not to proceed with the representation. The duty exists regardless of how brief the initial conference may be.
In order to avoid acquiring disqualifying information from a prospective client, a lawyer considering whether to undertake a new matter should limit the initial interview to only such information as reasonably appears necessary for that purpose. Where the information indicates that a conflict of interest or other reason for non-representation exists, the lawyer should so inform the prospective client or decline the representation. If the prospective client wishes to retain the lawyer, and if consent is possible under rule 4-1.7, then consent from all affected present or former clients must be obtained before accepting the representation.
A lawyer may condition conversations with a prospective client on the person's informed consent that no information disclosed during the consultation will prohibit the lawyer from representing a different client in the matter. See terminology for the definition of informed consent. If the agreement expressly so provides, the prospective client may also consent to the *461 lawyer's subsequent use of information received from the prospective client.
Even in the absence of an agreement, under subdivision (c), the lawyer is not prohibited from representing a client with interests adverse to those of the prospective client in the same or a substantially related matter unless the lawyer has received from the prospective client information that could be used to the disadvantage of the prospective client in the matter.
Under subdivision (c), the prohibition in this rule is imputed to other lawyers as provided in rule 4-1.10, but, under subdivision (d)(1), the prohibition and its imputation may be avoided if the lawyer obtains the informed consent, confirmed in writing, of both the prospective and affected clients. In the alternative, the prohibition and its imputation may be avoided if the conditions of subdivision (d)(2) are met and all disqualified lawyers are timely screened and written notice is promptly given to the prospective client. See Rule terminology (requirements for screening procedures). Paragraph (d)(2)(i) does not prohibit the screened lawyer from receiving a salary or partnership share established by prior independent agreement, but that lawyer may not receive compensation directly related to the matter in which the lawyer is disqualified.
Notice, including a general description of the subject matter about which the lawyer was consulted, and of the screening procedures employed, generally should be given as soon as practicable after the need for screening becomes apparent.
The duties under this rule presume that the prospective client consults the lawyer in good faith. A person who consults a lawyer simply with the intent of disqualifying the lawyer from the matter, with no intent of possibly hiring the lawyer, has engaged in a sham and should not be able to invoke this rule to create a disqualification.
For the duty of competence of a lawyer who gives assistance on the merits of a matter to a prospective client, see rule 4-1.1. For a lawyer's duties when a prospective client entrusts valuables or papers to the lawyer's care, see chapter 5, Rules Regulating The Florida Bar.

4-2. COUNSELOR

RULE 4-2.1 ADVISER
[No Change]

Comment

Scope of advice
[No Change]

Offering advice
In general, a lawyer is not expected to give advice until asked by the client. However, when a lawyer knows that a client proposes a course of action that is likely to result in substantial adverse legal consequences to the client, the lawyer's duty to the client under rule 4-1.4 may require that the lawyer actoffer advice if the client's course of action is related to the representation. Similarly, when a matter is likely to involve litigation, it may be necessary under rule 4-1.4 to inform the client of forms of dispute resolution that might constitute reasonable alternatives to litigation. A lawyer ordinarily has no duty to initiate investigation of a client's affairs or to give advice that the client has indicated is unwanted, but a lawyer may initiate advice to a client when doing so appears to be in the client's interest.

*462 RULE 4-2.2

INTERMEDIARYOPEN/VACANT
(a) When Lawyer May Act as Intermediary. A lawyer may act as intermediary between clients if the lawyer:
(1) consults with each client concerning the implications of the common representation, including the advantages and risks involved and the effect on the attorney client privileges, and obtains each client's consent to the common representation;
(2) reasonably believes that the matter can be resolved on terms compatible with the clients' best interests, that each client will be able to make adequately informed decisions in the matter, and that there is little risk of material prejudice to the interests of any of the clients if the contemplated resolution is unsuccessful; and
(3) reasonably believes that the common representation can be undertaken impartially and without improper effect on other responsibilities the lawyer has to any of the clients.
(b) Lawyer as Intermediary; Consultation With Clients. While acting as intermediary, the lawyer shall consult with each client concerning the decisions to be made and the considerations relevant in making them, so that each client can make adequately informed decisions.
(c) Withdrawal as Intermediary; Effect. A lawyer shall withdraw as intermediary if any of the clients so request or if any of the conditions stated in subdivision (a) are no longer satisfied. Upon withdrawal, the lawyer shall not continue to represent any of the clients in the matter that was the subject of the intermediation.

Comment
A lawyer acts as intermediary under this rule when the lawyer represents 2 or more parties with potentially conflicting interests. A key factor in defining the relationship is whether the parties share responsibility for the lawyer's fee, but the common representation may be inferred from other circumstances. Because confusion can arise as to the lawyer's role where each party is not separately represented, it is important that the lawyer make clear the relationship.
The rule does not apply to a lawyer acting as arbitrator or mediator between or among parties who are not clients of the lawyer, even where the lawyer has been appointed with the concurrence of the parties. In performing such a role the lawyer may be subject to applicable codes of ethics, such as the Code of Ethics for Arbitration in Commercial Disputes prepared by a joint committee of the American Bar Association and the American Arbitration Association.
A lawyer acts as intermediary in seeking to establish or adjust a relationship between clients on an amicable and mutually advantageous basis; for example, in helping to organize a business in which 2 or more clients are entrepreneurs, working out the financial reorganization of an enterprise in which 2 or more clients have an interest, arranging a property distribution in settlement of an estate, or mediating a dispute between clients. The lawyer seeks to resolve potentially conflicting interests by developing the parties' mutual interests. The alternative can be that each party may have to obtain separate representation, with the possibility in some situations of incurring additional cost, complication, or even litigation. Given these and other relevant factors, all the clients may prefer that the lawyer act as intermediary.
In considering whether to act as intermediary between clients, a lawyer should be mindful that if the intermediation fails the result can be additional cost, embarrassment, and recrimination. In some situations *463 the risk of failure is so great that intermediation is plainly impossible. For example, a lawyer cannot undertake common representation of clients between whom contentious litigation is imminent or who contemplate contentious negotiations. More generally, if the relationship between the parties has already assumed definite antagonism, the possibility that the clients' interests can be adjusted by intermediation ordinarily is not very good.
The appropriateness of intermediation can depend on its form. Forms of intermediation range from informal arbitration, where each client's case is presented by the respective client and the lawyer decides the outcome, to mediation, to common representation where the clients' interests are substantially though not entirely compatible. One form may be appropriate in circumstances where another would not. Other relevant factors are whether the lawyer subsequently will represent both parties on a continuing basis and whether the situation involves creating a relationship between the parties or terminating one.

Confidentiality and privilege
A particularly important factor in determining the appropriateness of intermediation is the effect on client-lawyer confidentiality and the attorney-client privilege. In a common representation, the lawyer is still required both to keep each client adequately informed and to maintain confidentiality of information relating to the representation. See rules 4-1.4 and 4-1.6. Complying with both requirements while acting as intermediary requires a delicate balance. If the balance cannot be maintained, the common representation is improper. With regard to the attorney-client privilege, the prevailing rule is that as between commonly represented clients the privilege does not attach. Hence, it must be assumed that if litigation eventuates between the clients, the privilege will not protect any such communications, and the clients should be so advised.
Since the lawyer is required to be impartial between commonly represented clients, intermediation is improper when that impartiality cannot be maintained. For example, a lawyer who has represented 1 of the clients for a long period and in a variety of matters might have difficulty being impartial between that client and one to whom the lawyer has only recently been introduced.

Consultation
In acting as intermediary between clients, the lawyer is required to consult with the clients on the implications of doing so and to proceed only upon consent based on such a consultation. The consultation should make clear that the lawyer's role is not that of partisanship normally expected in other circumstances.
Subdivision (b) is an application of the principle expressed in rule 4-1.4. Where the lawyer is intermediary, the clients ordinarily must assume greater responsibility for decisions than when each client is independently represented.

Withdrawal
Common representation does not diminish the rights of each client in the client-lawyer relationship. Each has the right to loyal and diligent representation, the right to discharge the lawyer as stated in rule 4-1.16, and the protection of rule 4-1.9 concerning obligations to a former client.

RULE 4-2.3 EVALUATION FOR USE BY THIRD PERSONS
(a) When Lawyer May UndertakeProvide Evaluation. A lawyer may undertakeprovide an evaluation of a matter affecting a client for the use of someone other than the client if:
*464 (1) the lawyer reasonably believes that making the evaluation is compatible with other aspects of the lawyer's relationship with the client; and
(2) the client consents after consultationgives informed consent.
(b)  (c) [No Change]

Comment

Definition
An evaluation may be performed at the client's direction but for the primary purpose of establishing information for the benefit of third parties; for example, an opinion concerning the title of property rendered at the behest of a vendor for the information of a prospective purchaser or at the behest of a borrower for the information of a prospective lender. In some situations, the evaluation may be required by a government agency; for example, an opinion concerning the legality of the securities registered for sale under the securities laws. In other instances, the evaluation may be required by a third person, such as a purchaser of a business.
Lawyers for the government may be called upon to give a formal opinion on the legality of contemplated government agency action. In making such an evaluation, the government lawyer acts at the behest of the government as the client but for the purpose of establishing the limits of the agency's authorized activity. Such an opinion is to be distinguished from confidential legal advice given agency officials. The critical question is whether the opinion is to be made public.
A legal evaluation should be distinguished from an investigation of a person with whom the lawyer does not have a client-lawyer relationship. For example, a lawyer retained by a purchaser to analyze a vendor's title to property does not have a client-lawyer relationship with the vendor. So also, an investigation into a person's affairs by a government lawyer, or by special counsel employed by the government, is not an evaluation as that term is used in this rule. The question is whether the lawyer is retained by the person whose affairs are being examined. When the lawyer is retained by that person, the general rules concerning loyalty to client and preservation of confidences apply, which is not the case if the lawyer is retained by someone else. For this reason, it is essential to identify the person by whom the lawyer is retained. This should be made clear not only to the person under examination, but also to others to whom the results are to be made available.

Duty to third person
[No Change]

Access to and disclosure of information
The quality of an evaluation depends on the freedom and extent of the investigation upon which it is based. Ordinarily, a lawyer should have whatever latitude of investigation seems necessary as a matter of professional judgment. Under some circumstances, however, the terms of the evaluation may be limited. For example, certain issues or sources may be categorically excluded or the scope of search may be limited by time constraints or the noncooperation of persons having relevant information. Any such limitations that are material to the evaluation should be described in the report. If, after a lawyer has commenced an evaluation, the client refuses to comply with the terms upon which it was understood the evaluation was to have been made, the lawyer's obligations are determined by law, having reference to the terms of the client's agreement and the surrounding circumstances. In no circumstances is the lawyer permitted to knowingly make a false statement of *465 material fact or law in providing an evaluation under this rule. See rule 4-4.1.

Financial auditors' requests for information
[No Change]

RULE 4-2.4 LAWYER SERVING AS THIRD-PARTY NEUTRAL
(a) A lawyer serves as a third-party neutral when the lawyer assists 2 or more persons who are not clients of the lawyer to reach a resolution of a dispute or other matter that has arisen between them. Service as a third-party neutral may include service as an arbitrator, a mediator, or in such other capacity as will enable the lawyer to assist the parties to resolve the matter.
(b) A lawyer serving as a third-party neutral shall inform unrepresented parties that the lawyer is not representing them. When the lawyer knows or reasonably should know that a party does not understand the lawyer's role in the matter, the lawyer shall explain the difference between the lawyer's role as a third-party neutral and a lawyer's role as one who represents a client.

Comment
Alternative dispute resolution has become a substantial part of the civil justice system. Aside from representing clients in dispute-resolution processes, lawyers often serve as third-party neutrals. A third-party neutral is a person, such as a mediator, arbitrator, conciliator, or evaluator, who assists the parties, represented or unrepresented, in the resolution of a dispute or in the arrangement of a transaction. Whether a third-party neutral serves primarily as a facilitator, evaluator, or decisionmaker depends on the particular process that is either selected by the parties or mandated by a court.
The role of a third-party neutral is not unique to lawyers, although, in some court-connected contexts, only lawyers are allowed to serve in this role or to handle certain types of cases. In performing this role, the lawyer may be subject to court rules or other law that apply either to third-party neutrals generally or to lawyers serving as third-party neutrals. Lawyer-neutrals may also be subject to various codes of ethics, such as the Code of Ethics for Arbitration in Commercial Disputes prepared by a joint committee of the American Bar Association and the American Arbitration Association, or the Model Standards of Conduct for Mediators jointly prepared by the American Bar Association, the American Arbitration Association and the Society of Professionals in Dispute Resolution. A Florida Bar member who is a certified mediator is governed by the applicable law and rules relating to certified mediators.
Unlike nonlawyers who serve as third-party neutrals, lawyers serving in this role may experience unique problems as a result of differences between the role of a third-party neutral and a lawyer's service as a client representative. The potential for confusion is significant when the parties are unrepresented in the process. Thus, subdivision (b) requires a lawyer-neutral to inform unrepresented parties that the lawyer is not representing them. For some parties, particularly parties who frequently use dispute-resolution processes, this information will be sufficient. For others, particularly those who are using the process for the first time, more information will be required. Where appropriate, the lawyer should inform unrepresented parties of the important differences between the lawyer's role as third-party neutral and a lawyer's role as a client representative, including the inapplicability of the attorney-client evidentiary privilege. *466 The extent of disclosure required under this subdivision will depend on the particular parties involved and the subject matter of the proceeding, as well as the particular features of the dispute-resolution process selected.
A lawyer who serves as a third-party neutral subsequently may be asked to serve as a lawyer representing a client in the same matter. The conflicts of interest that arise for both the individual lawyer and the lawyer's law firm are addressed in rule 4-1.12.
Lawyers who represent clients in alternative dispute-resolution processes are governed by the Rules of Professional Conduct. When the dispute-resolution process takes place before a tribunal, as in binding arbitration (see terminology), the lawyer's duty of candor is governed by rule 4-3.3. Otherwise, the lawyer's duty of candor toward both the third-party neutral and other parties is governed by rule 4-4.1.

4-3. ADVOCATE

RULE 4-3.1 MERITORIOUS CLAIMS AND CONTENTIONS
A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

Comment
The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed. However, the law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change.
The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. What is required of lawyers, however, is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions. Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous, however, if the client desires to have the action taken primarily for the purpose of harassing or maliciously injuring a person or if thelawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification, or reversal of existing law.
The lawyer's obligations under this rule are subordinate to federal or state constitutional law that entitles a defendant in a criminal matter to the assistance of counsel in presenting a claim or contention that otherwise would be prohibited by this rule.

RULE 4-3.2 EXPEDITING LITIGATION
[No Change]

Comment
Dilatory practices bring the administration of justice into disrepute. Delay should not be indulged merely for the convenience *467 of the advocates orAlthough there will be occasions when a lawyer may properly seek a postponement for personal reasons, it is not proper for a lawyer to routinely fail to expedite litigation solely for the convenience of the advocates. Nor will a failure to expedite be reasonable if done for the purpose of frustrating an opposing party's attempt to obtain rightful redress or repose. It is not a justification that similar conduct is often tolerated by the bench and bar. The question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay. Realizing financial or other benefit from otherwise improper delay in litigation is not a legitimate interest of the client.

RULE 4-3.7 LAWYER AS WITNESS
(a) When Lawyer May Testify. A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness on behalf of the client except whereunless:
(1) the testimony relates to an uncontested issue;
(2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;
(3) the testimony relates to the nature and value of legal services rendered in the case; or
(4) disqualification of the lawyer would work substantial hardship on the client.
(b) [No Change]

Comment
Combining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client.
The opposing party has proper objection where thetrier of fact may be confused or misled by a lawyer serving as both advocate and witness. The combination of roles may prejudice thatanother party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.
To protect the tribunal, subdivision (a) prohibits a lawyer from simultaneously serving as advocate and necessary witness except in those circumstances specified. Subdivision (a)(1) recognizes that if the testimony will be uncontested, the ambiguities in the dual role are purely theoretical. Subdivisions (a)(2) and (3) recognize that, where the testimony concerns the extent and value of legal services rendered in the action in which the testimony is offered, permitting the lawyers to testify avoids the need for a second trial with new counsel to resolve that issue. Moreover, in such a situation the judge has first-hand knowledge of the matter in issue; hence, there is less dependence on the adversary process to test the credibility of the testimony.
Apart from these 2 exceptions, subdivision (a)(4) recognizes that a balancing is required between the interests of the client and those of the tribunal and the opposing party. Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the *468 lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness. The principle of imputed disqualification conflict of interest principles stated in rules 4-1.7, 4-1.9, and 4-1.10 hashave no application to this aspect of the problem.
Because the tribunal is not likely to be misled when a lawyer acts as advocate in a trial in which another lawyer in the lawyer's firm will testify as a necessary witness, subdivision (b) permits the lawyer to do so except in situations involving a conflict of interest.
Whether the combination of roles involves an improperIn determining if it is permissible to act as advocate in a trial in which the lawyer will be a necessary witness, the lawyer must also consider that the dual role may give rise to a conflict of interest with respect to the client is determined by rulethat will require compliance with rules 4-1.7 or 4-1.9. For example, if there is likely to be substantial conflict between the testimony of the client and that of the lawyeror a member of the lawyer's firm, the representation is improperinvolves a conflict of interest that requires compliance with rule 4-1.7. This would be true even though the lawyer might not be prohibited by subdivision (a) from simultaneously serving as advocate and witness because the lawyer's disqualification would work a substantial hardship on the client. Similarly, a lawyer who might be permitted to simultaneously serve as an advocate and a witness by subdivision (a)(3) might be precluded from doing so by rule 4-1.9. The problem can arise whether the lawyer is called as a witness on behalf of the client or is called by the opposing party. Determining whether such a conflict exists is primarily the responsibility of the lawyer involved. If there is a conflict of interest, the lawyer must secure the client's informed consent. In some cases, the lawyer will be precluded from seeking the client's consent. See comment to rule 4-1.7. If a lawyer who is a member of a firm may not act as both advocate and witness by reason of conflict of interest, rule 4-1.10 disqualifies the firm also. See terminology for the definition of "confirmed in writing" and "informed consent."
Subdivision (b) provides that a lawyer is not disqualified from serving as an advocate because a lawyer with whom the lawyer is associated in a firm is precluded from doing so by subdivision (a). If, however, the testifying lawyer would also be disqualified by rule 4-1.7 or 4-1.9 from representing the client in the matter, other lawyers in the firm will be precluded from representing the client by rule 4-1.10 unless the client gives informed consent under the conditions stated in rule 4-1.7.

RULE 4-3.9 ADVOCATE INNONADJUDICATIVE PROCEEDINGS
A lawyer representing a client before a legislative body or administrative tribunal agency in a nonadjudicative proceeding shall disclose that the appearance is in a representative capacity and shall conform to the provisions of rules 4-3.3(a) through (cd), and 4-3.4(a) through (c), and 4-3.5(a), (c), and (d).

Comment
In representation before bodies such as legislatures, municipal councils, and executive and administrative agencies acting in a rule-making or policy-making capacity, lawyers present facts, formulate issues, and advance argument in the matters under consideration. The decision-making body, like a court, should be able to rely on the integrity of the submissions made to it. A lawyer appearing before such a body shouldmust deal with the tribunal honestly *469 and in conformity with applicable rules of procedure. See rules 4-3.3(a) through (d), and 4-3.4(a) through (c).
Lawyers have no exclusive right to appear before nonadjudicative bodies, as they do before a court. The requirements of this rule therefore may subject lawyers to regulations inapplicable to advocates who are not lawyers. However, legislatures and administrative agencies have a right to expect lawyers to deal with them as they deal with courts.
This rule only applies when a lawyer represents a client in connection with an official hearing or meeting of a governmental agency or a legislative body to which the lawyer or the lawyer's client is presenting evidence or argument. It does not apply to representation of a client in a negotiation or other bilateral transaction with a governmental agency; representation or in connection with an application for a license or other privilege or the client's compliance with generally applicable reporting requirements, such as the filing of income-tax returns. Nor does it apply to the representation of a client in connection with an investigation or examination of the client's affairs conducted by government investigators or examiners. Representation in such a transactionmatters is governed by rules 4-4.1 through 4-4.4.

4-4. TRANSACTIONS WITH PERSONS OTHER THAN CLIENTS

RULE 4-4.1 TRUTHFULNESS IN STATEMENTS TO OTHERS
[No Change]

Comment

Misrepresentation
A lawyer is required to be truthful when dealing with others on a client's behalf, but generally has no affirmative duty to inform an opposing party of relevant facts. A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false. Misrepresentations can also occur by failure to actpartially true but misleading statements or omissions that are the equivalent of affirmative false statements. For dishonest conduct that does not amount to a false statement or for misrepresentations by a lawyer other than in the course of representing a client, see rule 4-8.4.

Statements of fact
This rule refers to statements of fact. Whether a particular statement should be regarded as one of fact can depend on the circumstances. Under generally accepted conventions in negotiation, certain types of statements ordinarily are not taken as statements of material fact. Estimates of price or value placed on the subject of a transaction and a party's intentions as to an acceptable settlement of a claim are ordinarily in this category, and so is the existence of an undisclosed principal except where nondisclosure of the principal would constitute fraud. Lawyers should be mindful of their obligations under applicable law to avoid criminal and tortious misrepresentation.

Crime or fFraud by client
Under rule 4-1.2(d), a lawyer is prohibited from counseling or assisting a client in conduct that the lawyer knows is criminal or fraudulent. Subdivision (b) recognizes that states a specific application of the principle set forth in rule 4-1.2(d) and addresses the situation where a client's crime or fraud takes the form of a lie or misrepresentation. Ordinarily, a lawyer can avoid assisting a client's crime or fraud by withdrawing from the representation. Sometimes it may be necessary for the lawyer to give notice of the fact of withdrawal *470 and to disaffirm an opinion, document, affirmation or the like. In extreme cases, substantive law may require a lawyer to disclose certain information relating to the representation to avoid being deemed to have assisted the client's crime or fraud. The requirement ofIf the lawyer can avoid assisting a client's crime or fraud only by disclosing this information, then under subdivision (b) the lawyer is required to do so, unless the disclosure created by this subdivision is, however, subject to the obligations createdis prohibited by rule 4-1.6.

RULE 4-4.2 COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL
(a)  (b) [No Change]

Comment
This rule contributes to the proper functioning of the legal system by protecting a person who has chosen to be represented by a lawyer in a matter against possible overreaching by other lawyers who are participating in the matter, interference by those lawyers with the client-lawyer relationship, and the uncounseled disclosure of information relating to the representation.
This rule applies to communications with any person who is represented by counsel concerning the matter to which the communication relates.
The rule applies even though the represented person initiates or consents to the communication. A lawyer must immediately terminate communication with a person if, after commencing communication, the lawyer learns that the person is one with whom communication is not permitted by this rule.
This rule does not prohibit communication with a partyrepresented person, or an employee or agent of such a partyperson, concerning matters outside the representation. For example, the existence of a controversy between a government agency and a private party, or between 2 organizations, does not prohibit a lawyer for either from communicating with nonlawyer representatives of the other regarding a separate matter. Also, partiesNor does this rule preclude communication with a represented person who is seeking advice from a lawyer who is not otherwise representing a client in the matter. A lawyer may not make a communication prohibited by this rule through the acts of another. See rule 4-8.4(a). Parties to a matter may communicate directly with each other, and a lawyer is not prohibited from advising a client concerning a communication that the client is legally entitled to make, provided that the client is not used to indirectly violate the Rules of Professional Conduct. Also, a lawyer having independent justification for communicating with the other party is permitted to do so. Permitted communications include, for example, the right of a party to a controversy with a government agency to speak with government officials about the matter.
In the case of an represented organization, this rule prohibits communications by a lawyer for 1 party concerning the matter in representation with persons having a managerial responsibility on behalfa constituent of the organization and with any other person who supervises, directs, or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with that the matter may be imputed to the organization for purposes of civil or criminal liabilityor whose statement may constitute an admission on the part of the organization. Consent of the organization's lawyer is not required for communication with a former *471 constituent. If an agent or employeea constituent of the organization is represented in the matter by the agent's or employee's own counsel, the consent by that counsel to a communication will be sufficient for purposes of this rule. Compare rule 4-3.4(f). This rule also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question. In communication with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization. See rule 4-4.4.
The prohibition on communications with a represented person only applies in circumstances where the lawyer knows that the person is in fact represented in the matter to be discussed. This means that the lawyer has actual knowledge of the fact of the representation; but such actual knowledge may be inferred from the circumstances. See terminology. Thus, the lawyer cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious.
In the event the person with whom the lawyer communicates is not known to be represented by counsel in the matter, the lawyer's communications are subject to rule 4-4.3.

RULE 4-4.3 DEALING WITH UNREPRESENTED PERSONS
(a) In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel.
(b) [No Change]

Comment
An unrepresented person, particularly one not experienced in dealing with legal matters, might assume that a lawyer is disinterested in loyalties or is a disinterested authority on the law even when the lawyer represents a client. During the course of a lawyer's representation of a client, the lawyer should not give advice to an unrepresented person other than the advice to obtain counsel. In order to avoid a misunderstanding, a lawyer will typically need to identify the lawyer's client and, where necessary, explain that the client has interests opposed to those of the unrepresented person. For misunderstandings that sometimes arise when a lawyer for an organization deals with an unrepresented constituent, see rule 4-1.13(d).
This rule does not prohibit a lawyer from negotiating the terms of a transaction or settling a dispute with an unrepresented person. So long as the lawyer has explained that the lawyer represents an adverse party and is not representing the person, the lawyer may inform the person of the terms on which the lawyer's client will enter into an agreement or settle a matter, prepare documents that require the person's signature and explain the lawyer's own view of the meaning of the document or the lawyer's view of the underlying legal obligations.

RULE 4-4.4 RESPECT FOR RIGHTS OF THIRD PERSONS
(a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person or knowingly use methods of obtaining evidence that violate the legal rights of such a person.
*472 (b) A lawyer who receives a document relating to the representation of the lawyer's client and knows or reasonably should know that the document was inadvertently sent shall promptly notify the sender.

Comment
Responsibility to a client requires a lawyer to subordinate the interests of others to those of the client, but that responsibility does not imply that a lawyer may disregard the rights of third persons. It is impractical to catalogue all such rights, but they include legal restrictions on methods of obtaining evidence from third persons and unwarranted intrusions into privileged relationships, such as the client-lawyer relationship.
Subdivision (b) recognizes that lawyers sometimes receive documents that were mistakenly sent or produced by opposing parties or their lawyers. If a lawyer knows or reasonably should know that such a document was sent inadvertently, then this rule requires the lawyer to promptly notify the sender in order to permit that person to take protective measures. Whether the lawyer is required to take additional steps, such as returning the original document, is a matter of law beyond the scope of these rules, as is the question of whether the privileged status of a document has been waived. Similarly, this rule does not address the legal duties of a lawyer who receives a document that the lawyer knows or reasonably should know may have been wrongfully obtained by the sending person. For purposes of this rule, "document" includes e-mail or other electronic modes of transmission subject to being read or put into readable form.
Some lawyers may choose to return a document unread, for example, when the lawyer learns before receiving the document that it was inadvertently sent to the wrong address. Where a lawyer is not required by applicable law to do so, the decision to voluntarily return such a document is a matter of professional judgment ordinarily reserved to the lawyer. See rules 4-1.2 and 4-1.4.

4-5. LAW FIRMS AND ASSOCIATIONS

RULE 4-5.1 RESPONSIBILITIES OF A PARTNERS, MANAGERS, AND ORSUPERVISORY LAWYERS
(a) Duties Concerning Adherence to Rules of Professional Conduct. A member of the bar who is a partner in a law firm, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, proprietor, shareholder, member of a limited liability company, officer, director, or manager in an authorized business entity, as defined elsewhere in these rules, or who has supervisory authority over another lawyer in the law department of an enterprise or government agency, shall make reasonable efforts to ensure that the authorized business entity, enterprise, or government agencyfirm has in effect measures giving reasonable assurance that all lawyers therein conform to the Rules of Professional Conduct.
(b) Supervisory Lawyer's Duties. Any lawyer in an authorized business entity, enterprise, or government agency having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct.
(c) Responsibility for Rules Violations. A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:
*473 (1) the lawyer orders the specific conduct or, with knowledge thereof, ratifies the conduct involved; or
(2) the lawyer is a partner, proprietor, shareholder, member of a limited liability company, officer, director, partner, or manager in an authorized business entity, as defined elsewhere in these rules, or has comparable managerial authority in the law firm in which the other lawyer practices or has direct supervisory authority over another the other lawyer in the law department of an enterprise or government agency, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

Comment
Subdivisions (a) and (b) referapplies to lawyers who have supervisorymanagerial authority over the professional work of a firm or legal department of a government agency.See terminology. This includes members of a partnership, proprietors, the shareholders in a law firm organized as a professional corporation, and members of a limited liability company, other associations authorized to practice law; as well as lawyers having supervisorycomparable managerial authority in the a legal services organization or a law department of an enterprise or government agency, and lawyers who have intermediate managerial responsibilities in an authorized business entitya firm. Subdivision (b) applies to lawyers who have supervisory authority over the work of other lawyers in a firm.
Subdivision (a) requires lawyers with managerial authority within a firm to make reasonable efforts to establish internal policies and procedures designed to provide reasonable assurance that all lawyers in the firm will conform to the Rules of Professional Conduct. Such policies and procedures include those designed to detect and resolve conflicts of interest, identify dates by which actions must be taken in pending matters, account for client funds and property, and ensure that inexperienced lawyers are properly supervised.
TheOther measures that may be required to fulfill the responsibility prescribed in subdivisions (a) and (b) can depend on the firm's structure and the nature of its practice. In a small firm of experienced lawyers, informal supervision and occasional admonitionperiodic review of compliance with the required systems ordinarily might be sufficientwill suffice. In a large firm, or in practice situations in which intensely difficult ethical problems frequently arise, more elaborate proceduresmeasures may be necessary. Some firms, for example, have a procedure whereby junior lawyers can make confidential referral of ethical problems directly to a designated supervising lawyer or special committee. See rule 4-5.2. Firms, whether large or small, may also rely on continuing legal education in professional ethics. In any event the ethical atmosphere of a firm can influence the conduct of all its members and a lawyer having authority over the work of another the partners may not assume that the subordinate lawyerall lawyers associated with the firm will inevitably conform to the rules.
Subdivision (c)(1) expresses a general principle of personal responsibility for acts of another. See also rule 4-8.4(a).
Subdivision (c)(2) defines the duty of a partner or other lawyer having comparable managerial authority in a law firm, as well as a lawyer having supervisory authority over performance of specific legal work by another lawyer. Whether a lawyer has such supervisory authority in particular circumstances is a question of fact. Partners, proprietors, shareholders, members of a limited liability company, officers, *474 directors, and managers and lawyers with comparable authority have at least indirect responsibility for all work being done by the firm, while a partner, shareholder, member of a limited liability company, officer, director, and or manager in charge of a particular matter ordinarily also has authority oversupervisory responsibility for the work of other firm lawyers engaged in the matter. Appropriate remedial action by a partner or managing lawyer would depend on the immediacy of the partner's, shareholder's, member's (of a limited liability company), officer's, director's, or manager's that lawyer's involvement and the seriousness of the misconduct. TheA supervisor is required to intervene to prevent avoidable consequences of misconduct if the supervisor knows that the misconduct occurred. Thus, if a supervising lawyer knows that a subordinate misrepresented a matter to an opposing party in negotiation, the supervisor as well as the subordinate has a duty to correct the resulting misapprehension.
Professional misconduct by a lawyer under supervision could reveal a violation of subdivision (b) on the part of the supervisory lawyer even though it does not entail a violation of subdivision (c) because there was no direction, ratification, or knowledge of the violation.
Apart from this rule and rule 4-8.4(a), a lawyer does not have disciplinary liability for the conduct of a partner, shareholder, member of a limited liability company, officer, director, manager, associate, or subordinate. Whether a lawyer may be liable civilly or criminally for another lawyer's conduct is a question of law beyond the scope of these rules.
The duties imposed by this rule on managing and supervising lawyers do not alter the personal duty of each lawyer in a firm to abide by the Rules of Professional Conduct. See rule 4-5.2(a).

RULE 4-5.3 RESPONSIBILITIES REGARDING NONLAWYER ASSISTANTS
(a) Use of Titles by Nonlawyer Assistants. A person who uses the title of paralegal, legal assistant, or other similar term when offering or providing services to the public must work for or under the direction or supervision of a lawyer or an authorized business entity as defined elsewhere in these Rules Regulating The Florida Barlaw firm.
(b) Supervisory Responsibility. With respect to a nonlawyer employed or retained by or associated with a lawyer or an authorized business entity as defined elsewhere in these Rules Regulating The Florida Bar:
(1) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;
(2) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and
(3) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:
(A) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or
(B) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over *475 the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.
(c) [No Change]

Comment
Lawyers generally employ assistants in their practice, including secretaries, investigators, law student interns, and paraprofessionals such as paralegals and legal assistants. Such assistants, whether employees or independent contractors, act for the lawyer in rendition of the lawyer's professional services. A lawyer should must give such assistants appropriate instruction and supervision concerning the ethical aspects of their employment, particularly regarding the obligation not to disclose information relating to representation of the client. The measures employed in supervising nonlawyers should take account of the level of their legal training and the fact that they are not subject to professional discipline. If an activity requires the independent judgment and participation of the lawyer, it cannot be properly delegated to a nonlawyer employee.
Subdivision (b)(1) requires lawyers with managerial authority within a law firm to make reasonable efforts to establish internal policies and procedures designed to provide reasonable assurance that nonlawyers in the firm will act in a way compatible with the Rules of Professional Conduct. See comment to rule 4-5.1. Subdivision (b)(2) applies to lawyers who have supervisory authority over the work of a nonlawyer. Subdivision (b)(3) specifies the circumstances in which a lawyer is responsible for conduct of a nonlawyer that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer.
Nothing provided in this rule should be interpreted to mean that a nonlawyer may have any ownership or partnership interest in a law firm, which is prohibited by rule 4-5.4. Additionally, this rule would not permit a lawyer to accept employment by a nonlawyer or group of nonlawyers, the purpose of which is to provide the supervision required under this rule. Such conduct is prohibited by rules 4-5.4 and 4-5.5.

RULE 4-5.4 PROFESSIONAL INDEPENDENCE OF A LAWYER
(a) Sharing Fees with Nonlawyers. A lawyer or law firm shall not share legal fees with a nonlawyer, except that:
(1) an agreement by a lawyer with the lawyer's firm, partner, or associate may provide for the payment of money, over a reasonable period of time after the lawyer's death, to the lawyer's estate or to 1 or more specified persons;
(2) a lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that proportion of the total compensation that fairly represents the services rendered by the deceased lawyer;
(3) a lawyer who purchases the practice of a deceased, disabled, or disappeared lawyer may, in accordance with the provisions of rule 4-1.17, pay to the estate or other legally authorized representative of that lawyer the agreed upon purchase price; and
(4) bonuses may be paid to nonlawyer employees for work performed, and may be based on their extraordinary efforts on a particular case or over a specified time period. Bonus payments shall not be based on cases or clients brought to the lawyer or law firm by the actions of the nonlawyer. A lawyer shall not provide a *476 bonus payment that is calculated as a percentage of legal fees received by the lawyer or law firm.; and
(5) a lawyer may share court-awarded fees with a nonprofit, pro bono legal services organization that employed, retained, or recommended employment of the lawyer in the matter.
(b)  (d) [No Change]
(e) Nonlawyer Ownership of Authorized Business Entity. A lawyer shall not practice with or in the form of a business entity authorized to practice law for a profit if:
(1) a nonlawyer owns any interest therein, except that a fiduciary representative of the estate of a lawyer may hold the stock or interest of the lawyer for a reasonable time during administration; or
(2) a nonlawyer is a corporate director or officer thereof or occupies the position of similar responsibility in any form of association other than a corporation; or
(23) a nonlawyer has the right to direct or control the professional judgment of a lawyer.

Comment
The provisions of this rule express traditional limitations on sharing fees. These limitations are to protect the lawyer's professional independence of judgment. Where someone other than the client pays the lawyer's fee or salary, or recommends employment of the lawyer, that arrangement does not modify the lawyer's obligation to the client. As stated in subdivision (cd), such arrangements should not interfere with the lawyer's professional judgment.
This rule also expresses traditional limitations on permitting a third party to direct or regulate the lawyer's professional judgment in rendering legal services to another. See also rule 4-1.8(f) (lawyer may accept compensation from a third party as long as there is no interference with the lawyer's independent professional judgment and the client gives informed consent).
The prohibition against sharing legal fees with nonlawyer employees is not intended to prohibit profit-sharing arrangements that are part of a qualified pension, profit-sharing, or retirement plan. Compensation plans, as opposed to retirement plans, may not be based on legal fees.

RULE 4-5.6 RESTRICTIONS ON RIGHT TO PRACTICE
A lawyer shall not participate in offering or making:
(a) a partnership or, shareholders, operating, employment, or other similar type of agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or
(b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy between private parties.

Comment
An agreement restricting the right of partners or associateslawyers to practice after leaving a firm not only limits their professional autonomy, but also limits the freedom of clients to choose a lawyer. Subdivision (a) prohibits such agreements except for restrictions incident to provisions concerning retirement benefits for service with the firm.
Subdivision (b) prohibits a lawyer from agreeing not to represent other persons in connection with settling a claim on behalf of a client.
This rule does not apply to prohibit restrictions that may be included in the terms of the sale of a law practice in *477 accordance with the provisions of rule 4-1.17.
This rule is not a per se prohibition against severance agreements between lawyers and law firms. Severance agreements containing reasonable and fair compensation provisions designed to avoid disputes requiring time-consuming quantum merit analysis are not prohibited by this rule. Severance agreements, on the other hand, that contain punitive clauses, the effect of which are to restrict competition or encroach upon a client's inherent right to select counsel, are prohibited. The percentage limitations found in rule 4-1.5(f)(4)(D) do not apply to fees divided pursuant to a severance agreement. No severance agreement shall contain a fee-splitting arrangement that results in a fee prohibited by the Rules Regulating The Florida Bar.

4-8. MAINTAINING THE INTEGRITY OF THE PROFESSION

RULE 4-8.1 BAR ADMISSION AND DISCIPLINARY MATTERS
[No Change]

Comment
The duty imposed by this rule extends to persons seeking admission to the bar as well as to lawyers. Hence, if a person makes a material false statement in connection with an application for admission, it may be the basis for subsequent disciplinary action if the person is admitted and in any event may be relevant in a subsequent admission application. The duty imposed by this rule applies to a lawyer's own admission or discipline as well as that of others. Thus, it is a separate professional offense for a lawyer to knowingly make a misrepresentation or omission in connection with a disciplinary investigation of the lawyer's own conduct. ThisSubdivision (b) of this rule also requires correction of any prior misstatement in the matter that the applicant or lawyer may have made and affirmative clarification of any misunderstanding on the part of the admissions or disciplinary authority of which the person involved becomes aware.
This rule is subject to the provisions of the fifth amendment of the United States Constitution and the corresponding provisions of the Florida Constitution. A person relying on such a provision in response to a question, however, should do so openly and not use the right of nondisclosure as a justification for failure to comply with this rule.
A lawyer representing an applicant for admission to the bar, or representing a lawyer who is the subject of a disciplinary inquiry or proceeding, is governed by the rules applicable to the client-lawyer relationship, including rule 4-1.6 and, in some cases, rule 4-3.3.
An applicant for admission may commit acts that adversely reflect on the applicant's fitness to practice law and which are discovered only after the applicant becomes a member of the bar. This rule provides a means to address such misconduct in the absence of such a provision in the Rules of the Supreme Court Relating to Admissions to the Bar.

RULE 4-8.3 REPORTING PROFESSIONAL MISCONDUCT
(a) Reporting Misconduct of Other Lawyers. A lawyer having knowledgewho knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the appropriate professional authority.
*478 (b) Reporting Misconduct of Judges. A lawyer having knowledgewho knows that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office shall inform the appropriate authority.
(c) Confidences Preserved. This rule does not require disclosure of information otherwise protected by rule 4-1.6 or information gained by a lawyer or judge while participating in an approved lawyers assistance program. Provided further, however, that if a lawyer's participation in an approved lawyers assistance program is part of a disciplinary sanction this limitation shall not be applicable and a report about the lawyer who is participating as part of a disciplinary sanction shall be made to the appropriate disciplinary agency.
(d) [No Change]

Comment
Self-regulation of the legal profession requires that members of the profession initiate disciplinary investigation when they know of a violation of the Rules of Professional Conduct. Lawyers have a similar obligation with respect to judicial misconduct. An apparently isolated violation may indicate a pattern of misconduct that only a disciplinary investigation can uncover. Reporting a violation is especially important where the victim is unlikely to discover the offense.
A report about misconduct is not required where it would involve violation of rule 4-1.6. However, a lawyer should encourage a client to consent to disclosure where prosecution would not substantially prejudice the client's interests.
If a lawyer were obliged to report every violation of the rules, the failure to report any violation would itself be a professional offense. Such a requirement existed in many jurisdictions, but proved to be unenforceable. This rule limits the reporting obligation to those offenses that a self-regulating profession must vigorously endeavor to prevent. A measure of judgment is, therefore, required in complying with the provisions of this rule. The term "substantial" refers to the seriousness of the possible offense and not the quantum of evidence of which the lawyer is aware.
The duty to report professional misconduct does not apply to a lawyer retained to represent a lawyer whose professional conduct is in question. Such a situation is governed by the rules applicable to the client-lawyer relationship.
Information about a lawyer's or judge's misconduct or fitness may be received by a lawyer in the course of that lawyer's participation in an approved lawyers or judges assistance program. In that circumstance, providing for an exception to the reporting requirements of subdivisions (a) and (b) of this rule encourages lawyers and judges to seek treatment through such a program. Conversely, without such an exception, lawyers and judges may hesitate to seek assistance from these programs, which may then result in additional harm to their professional careers and additional injury to the welfare of clients and the public. These rules do not otherwise address the confidentiality of information received by a lawyer or judge participating in an approved lawyers assistance program; such an obligation, however, may be imposed by the rules of the program or other law.

RULE 4-8.4 MISCONDUCT
A lawyer shall not:
(a)  (d) [No Change]
(e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate *479 the Rules of Professional Conduct or other law;
(f)  (i) [No Change]

Comment
Lawyers are subject to discipline when they violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another, as when they request or instruct an agent to do so on the lawyer's behalf. Subdivision (a), however, does not prohibit a lawyer from advising a client concerning action the client is legally entitled to take, provided that the client is not used to indirectly violate the Rules of Professional Conduct.
Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpitude." That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, or breach of trust or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.
A lawyer may refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists. The provisions of rule 4-1.2(d) concerning a good faith challenge to the validity, scope, meaning, or application of the law apply to challenges of legal regulation of the practice of law.
Subdivision (c) recognizes instances where lawyers in criminal law enforcement agencies or regulatory agencies advise others about or supervise others in undercover investigations, and provides an exception to allow the activity without the lawyer engaging in professional misconduct. The exception acknowledges current, acceptable practice of these agencies. Although the exception appears in this rule, it is also applicable to rules 4-4.1 and 4-4.3. However, nothing in the rule allows the lawyer to engage in such conduct if otherwise prohibited by law or rule.
Subdivision (d) of this rule proscribes conduct that is prejudicial to the administration of justice. Such proscription includes the prohibition against discriminatory conduct committed by a lawyer while performing duties in connection with the practice of law. The proscription extends to any characteristic or status that is not relevant to the proof of any legal or factual issue in dispute. Such conduct, when directed towards litigants, jurors, witnesses, court personnel, or other lawyers, whether based on race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, physical characteristic, or any other basis, subverts the administration of justice and undermines the public's confidence in our system of justice, as well as notions of equality. This subdivision does not prohibit a lawyer from representing a client as may be permitted by applicable law, such as, by way of example, representing a client accused of committing discriminatory conduct.
Lawyers holding public office assume legal responsibilities going beyond those of *480 other citizens. A lawyer's abuse of public office can suggest an inability to fulfill the professional role of attorney. The same is true of abuse of positions of private trust such as trustee, executor, administrator, guardian, or agent and officer, director, or manager of a corporation or other organization.
A lawyer's obligation to respond to an inquiry by a disciplinary agency is stated in subdivision (g) and rule 3-7.6(h)(2). While response is mandatory, the lawyer may deny the charges or assert any available privilege or immunity or interpose any disability that prevents disclosure of certain matter. A response containing a proper invocation thereof is sufficient under the Rules Regulating The Florida Bar. This obligation is necessary to ensure the proper and efficient operation of the disciplinary system.
Subdivision (h) of this rule was added to make consistent the treatment of attorneys who fail to pay child support with the treatment of other professionals who fail to pay child support, in accordance with the provisions of section 61.13015, Florida Statutes. That section provides for the suspension or denial of a professional license due to delinquent child support payments after all other available remedies for the collection of child support have been exhausted. Likewise, subdivision (h) of this rule should not be used as the primary means for collecting child support, but should be used only after all other available remedies for the collection of child support have been exhausted. Before a grievance may be filed or a grievance procedure initiated under this subdivision, the court that entered the child support order must first make a finding of willful refusal to pay. The child support obligation at issue under this rule includes both domestic (Florida) and out-of-state (URESA) child support obligations, as well as arrearages.
Subdivision (i) proscribes exploitation of the client and the lawyer-client relationship by means of commencement of sexual conduct. The lawyer-client relationship is grounded on mutual trust. A sexual relationship that exploits that trust compromises the lawyer-client relationship. For purposes of this subdivision, client means an individual, or a representative of the client, including but not limited to a duly authorized constituent of a corporate or other non-personal entity, and lawyer refers only to the lawyer(s) engaged in the legal representation and not other members of the law firm.

CHAPTER 5. RULES REGULATING TRUST ACCOUNTS

5-1. GENERALLY

RULE 5-1.1 TRUST ACCOUNTS
(a)  (e) [No Change]
(f) Disputed Ownership of Trust Funds. When in the course of representation a lawyer is in possession of property in which both2 or more persons (1 of whom may be the lawyer) and another person claim interests, the property shall be treated by the lawyer as trust property, but the portion belonging to the lawyer or law firm shall be withdrawn within a reasonable time after it becomes due unless the right of the lawyer or law firm to receive it is disputed, in which event the portion in dispute shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.
(g)  (j) [No Change]

Comment
A lawyer must hold property of others with the care required of a professional *481 fiduciary. This chapter requires maintenance of a bank or savings and loan association account, clearly labeled as a trust account and in which only client or third party trust funds are held.
Securities should be kept in a safe deposit box, except when some other form of safekeeping is warranted by special circumstances.
All property that is the property of clients or third persons should be kept separate from the lawyer's business and personal property and, if money, in 1 or more trust accounts, unless requested otherwise in writing by the client. Separate trust accounts may be warranted when administering estate money or acting in similar fiduciary capacities.
A lawyer who holds funds for a client or third person and who determines that the funds are not nominal or short-term as defined elsewhere in this subchapter should hold the funds in a separate interest-bearing account with the interest accruing to the benefit of the client or third person unless directed otherwise in writing by the client or third person.
Lawyers often receive funds from third parties from which the lawyer's fee will be paid. If there is risk that the client may divert the funds without paying the fee, tThe lawyer is not required to remit the portion from which the fee is to be paidto the client funds that the lawyer reasonably believes represent fees owed. However, a lawyer may not hold funds to coerce a client into accepting the lawyer's contention. The disputed portion of the funds shouldmust be kept in a trust account and the lawyer should suggest means for prompt resolution of the dispute, such as arbitration. The undisputed portion of the funds shall be promptly distributed.
Third parties, such as a client's creditors, may have justlawful claims against funds or other property in a lawyer's custody. A lawyer may have a duty under applicable law to protect such third party claims against wrongful interference by the client and, accordingly, may. When the lawyer has a duty under applicable law to protect the third-party claim and the third-party claim is not frivolous under applicable law, the lawyer must refuse to surrender the property to the client until the claims are resolved. However, a lawyer should not unilaterally assume to arbitrate a dispute between the client and the third party, and, where appropriate, the lawyer should consider the possibility of depositing the property or funds in dispute into the registry of the applicable court so that the matter may be adjudicated.
The obligations of a lawyer under this chapter are independent of those arising from activity other than rendering legal services. For example, a lawyer who serves only as an escrow agent is governed by the applicable law relating to fiduciaries even though the lawyer does not render legal services in the transaction and is not governed by this rule.
Each lawyer is required to be familiar with and comply with the Rules Regulating Trust Accounts as adopted by the Supreme Court of Florida.
Money or other property entrusted to a lawyer for a specific purpose, including advances for fees, costs, and expenses, is held in trust and must be applied only to that purpose. Money and other property of clients coming into the hands of a lawyer are not subject to counterclaim or setoff for attorney's fees, and a refusal to account for and deliver over such property upon demand shall be a conversion. This does not preclude the retention of money or other property upon which a lawyer has a valid lien for services or to preclude the *482 payment of agreed fees from the proceeds of transactions or collections.
Advances for fees and costs (funds against which costs and fees are billed) are the property of the client or third party paying same on a client's behalf and are required to be maintained in trust, separate from the lawyer's property. Retainers are not funds against which future services are billed. Retainers are funds paid to guarantee the future availability of the lawyer's legal services and are earned by the lawyer upon receipt. Retainers, being funds of the lawyer, may not be placed in the client's trust account.
The test of excessiveness found elsewhere in the Rules Regulating The Florida Bar applies to all fees for legal services including retainers, nonrefundable retainers, and minimum or flat fees.
NOTES
[1] Pursuant to Rule Regulating the Florida Bar 1-12.1(i), the Bar asks this Court to waive review of these minimal revisions by the Board of Governors and the publication of any revisions that were not published in The Florida Bar News. After examining the revisions, the Court grants the Bar's request for waiver.
[2] Although The Florida Bar Public Interest Law Section, the University of Miami School of Law Center for Ethics and Public Service, and the Florida Public Defenders Association filed "comments" with respect to rules 4-1.14 (Client Under a Disability), 4-6.1 (Pro Bono Public Service), and 4-6.5 (Voluntary Pro Bono Plan), The Florida Bar did not propose amendments to those rules. Thus, the suggested amendments to those rules are not properly before the Court. Accordingly, the Court declines to consider the suggested amendments.